**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| FIDELITY NATIONAL TITLE INSURANCE COMPANY<br><br><br>Plaintiff,<br><br>v.<br><br>APM MANAGEMENT SERVICE'S, LLC, RICHARD C. APPELBAUM, and BANK OF AMERICA, N.A., a nominal defendant,<br><br>Defendants. | Case No. 4:22-cv-1391<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

COMES NOW Plaintiff Fidelity National Title Insurance Company ("Plaintiff"), by and through its undersigned counsel, and for its Complaint against Defendants APM Management Service's, LLC, Richard C. Appelbaum, and Bank of America, N.A., states as follows:

**THE PARTIES**

1. Plaintiff Fidelity National Title Insurance Company ("Plaintiff") is a Florida corporation with its principal office located at 601 Riverside Avenue, Jacksonville, Florida 32204.

2. Defendant APM Management Service's, LLC ("APM") is a Missouri limited liability company with its principal office (and registered agent Richard C. Appelbaum) located at 11970 Tyra Ct., Maryland Heights, Missouri 63043.

3. Defendant Richard C. Appelbaum ("Appelbaum") is a citizen of the State of Missouri who resides in the City of Maryland Heights, St. Louis County, Missouri.

4. Upon information and belief, Appelbaum is the sole member of APM.

5.      APM, Appelbaum, and their agents, representatives, and associates shall be referred to herein as the "APM Actors."

6.      Upon information and belief, the acts and omissions alleged to have been engaged in by the APM Actors were done with the express knowledge, consent, and ratification of APM, Appelbaum, and their officers, agents, employees, or representatives, while actively engaged in the management or operation of APM's business or affairs.

7.      Upon information and belief, all of the APM Actors, and each of them, were the agents and/or employees, co-venturers, partners or in some manner agents and/or principals for each other, and at the time of the incidents which comprise the Complaint herein, were acting within the course and scope of said agency and/or employment, with the knowledge, consent, and approval of APM.

8.      Defendant Bank of America, N.A. ("BOA") is a national banking association with its principal place of business located at 100 N. Tryon Street, Charlotte, North Carolina 28255.

9.      BOA has been named as a nominal defendant in this action solely due to the fact that it maintains custody and control over a bank account or accounts in New York where funds from an escrow account controlled by Plaintiff were fraudulently diverted through the use of fraudulent wire instructions and other documents as more fully described below.

10.     As a nominal defendant, Plaintiff seeks no relief from BOA at this point other than an Order freezing the account into which the monies were fraudulently diverted, and any other account at BOA or any other banking institution into which funds were transferred and enjoining any further banking activity in the accounts until further Order of Court.

**JURISDICTION AND VENUE**

11.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 by virtue of violations of federal law, in particular the Computer Fraud and Abuse Act- Fr (the "CFAA").

12.     This Court also has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 by virtue of complete diversity of citizenship and because the amount in controversy exceeds $75,000, exclusive of interests and costs.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because Appelbaum resides in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

**BACKGROUND**

14.     Non-party CP Logistics Marshall Building, 11, LLC, ("CP Logistics") was the owner of real property located at 850 Gateway Global Drive, Byhalia, Mississippi ("the Property").

15.     CP Logistics, as lessor, leased a warehouse on the Property to AMAZON.COM SERVICES LLC, pursuant to a Lease Agreement dated April 9, 2021.

16.     CP Logistics entered into agreements with AMAZON.COM SERVICES LLC to perform certain improvements to the Property.

17.     Non-Party LPC Real Estate Corp. ("LPC"), as buyer, purchased the Property from CP Logistics, as seller, pursuant to a Purchase and Sale Agreement dated December 2, 2021.

18.     Under the Purchase and Sale Agreement, CP Logistics agreed to complete the improvements, which are described in the Purchase and Sale Agreement as "Seller's Remaining Improvements."

19.     Pursuant to a Construction Escrow Agreement dated December 21, 2021, between CP Logistics, as seller, LPC, as buyer, and Plaintiff as escrow agent, CP Logistics deposited $2,258,278.00 (the "Escrow Funds") into an escrow account controlled by Plaintiff.  (A true and correct copy of the Construction Escrow Agreement is attached to this Complaint as Exhibit "A").

20.     Upon the satisfactory completion of the Seller's Remaining Improvements, the Escrow Funds were to be released in accordance with the terms of the Escrow Agreement.

## THE FRAUDULENT WIRE INSTRUCTIONS

21.     On or about December 8, 2022, Plaintiff received an e-mail from CP Logistics' counsel requesting the release of the Escrow Funds.

22.     On December 12, 2022, Plaintiff received another e-mail, allegedly from the office of CP Logistics' counsel, providing wiring instructions for the release of the Escrow Funds (the "Fraudulent Wire Instructions").  (A true and correct copy of the Fraudulent Wire Instructions is attached to this Complaint as Exhibit "B").

23.     In fact, the e-mail was not from CP Logistics' counsel, but was from an unknown third party impersonating CP Logistics' counsel.  Plaintiff believes that agents, associates, or representatives of APM compromised the email accounts of one or more parties to the transaction or their attorneys, resulting in "spoofed" email transmissions from those spoofed accounts.

24.     The Fraudulent Wire Instructions directed that the Escrow Funds be wired into an account titled in the name of APM maintained at BOA, account number ending 5416 (the "Fraudulent Account").

25.     In reliance upon the Fraudulent Wire Instructions, on December 12, 2022, Plaintiff wired the sum of $2,258,274.00 to the Fraudulent Account.

26.     To hide the diversion of the Escrow Monies to the Fraudulent Account, the APM Actors created a fraudulent wire confirmation purporting to show the wiring of the Escrow Monies to an account of Seller at JPMorgan Chase Bank, N.A. (A true and correct copy of the fraudulent wire confirmation is attached to this Complaint as Exhibit "C")

27.     Subsequent to the transfer of the monies into the Fraudulent Account, Plaintiff was contacted by the Seller which advised that it had not received the released Escrow Funds.  Seller later reviewed the Fraudulent Wire Instructions and informed Plaintiff that the Fraudulent Wire Instructions were fraudulent and that the Fraudulent Account was not an account of Seller.  Seller's counsel also confirmed that the e-mail transmitting the Fraudulent Wire Instructions was not sent from his email account.

28.     The compromised computers were computers that were used by the parties in or affecting interstate commerce or communication and were therefore protected computers under the CFAA.

29.     The unauthorized access to these computers and the use of that access to commit fraud is a direct violation of the CFAA.

## FIRST CLAIM FOR RELIEF
### Violation of the CFAA against APM Actors

30.     Plaintiff incorporates by reference all the other allegations contained in this Complaint.

31.     The conduct engaged in by the APM Actors constituted a direct violation of the CFAA.

32.     The CFAA specifically provides that any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator and may obtain compensatory damages and injunctive or other equitable relief.

## SECOND CLAIM FOR RELIEF
**Fraud against APM Actors**

33.     Plaintiff incorporates by reference all the other allegations contained in this Complaint.

34.     The APM Actors made false representations to Plaintiff through their sending of the Fraudulent Wire Instructions and False Contact Information.  Specifically, in sending the Fraudulent Wire Instructions, the APM Actors represented that Plaintiff could transfer the funds from the Escrow Account into the Fraudulent Account in fulfillment of Plaintiff's obligations under the Escrow Agreement. Further, by providing the False Contact Information, the APM Actors perpetuated the falsehood that the wiring information was legitimate.  The dates, speakers, and content of the false statements are described with particularity above.

35.     Upon information and belief, each false statement made in connection with the Fraudulent Wire Instructions and False Contact Information was knowingly made and was designed to defraud Plaintiff.

36.     Plaintiff was in fact deceived by the APM Actors' false statements and actions.

37.     Plaintiff reasonably relied upon the APM Actors' false statements and actions to its detriment.

38.     The misrepresentations made by the APM Actors were material in that Plaintiff would not have wired the funds to the Fraudulent Account but for the Fraudulent Wire Instructions and False Contact Information.

39.     The APM Actors' false statements and actions have directly and proximately damaged Plaintiff in an amount to be determined at trial, but that is not less than $75,000.00.

40.     Because of the willful or wanton conduct of the APM Actors as described above, the APM Actors are liable to Plaintiff for both compensatory and punitive damages.

**THIRD CLAIM FOR RELIEF**
**Constructive Trust against all Defendants**

41.     Plaintiff incorporates by reference all the other allegations contained in this Complaint.

42.     The APM Actors improperly and without authorization obtained the funds from the Escrow Account.

43.     The APM Actor's fraudulent conversion of the funds was wrongful, as the intent of the fraudulent actions was to deprive the rightfully entitled party of the funds from the Escrow Account and to expose Plaintiff to a risk of loss for the transfer of the proceeds to the Fraudulent Account.

44.     As a result of the wrongful conduct of the APM Actors, a constructive trust is warranted over the funds transferred into the Fraudulent Account, the funds in any other account at BOA or any other banking institution into which funds were transferred, and any assets acquired with, or traceable to these stolen funds.

45.     In particular, a constructive trust is warranted over any remaining funds in the Fraudulent Account and any other account at BOA into which funds were transferred.

46.     BOA should be declared a constructive trustee of the monies remaining in the Fraudulent Account and any other account at BOA into which funds were transferred.

47.     Accordingly, Plaintiff respectfully requests that the Court impose a constructive trust on the fraudulently obtained funds, as well as any and all monies or other assets which can be traced to the stolen funds; direct BOA to maintain possession of any and all such proceeds pending further Order of this Court; and granting Plaintiff such other relief as may be just and proper.

## FOURTH CLAIM FOR RELIEF
### Request for Injunction

48.     Plaintiff incorporates by reference all the other allegations contained in this Complaint.

49.     The APM Actors acquired the monies from the Escrow Account by fraudulent means.

50.     Based on the manner in which the proceeds were diverted, it is likely that the APM Actors will dissipate the funds in the Fraudulent Account if not enjoined from doing so, making it difficult, if not impossible, to recover the converted funds.

51.     This Court has the authority to issue an injunction to enjoin the dissipation of funds.

52.     The CFAA specifically provides for the award of injunctive relief.

53.     The APM Actors must be enjoined from utilizing or transferring any funds received as a result of the fraudulent conduct, and from utilizing or transferring any other funds or assets acquired with the funds received as a result of the fraudulent conduct, including the funds in the Fraudulent Account at BOA.

54.     BOA should be enjoined from allowing the distribution of any monies in the Fraudulent Account and any other account at BOA into which funds were transferred without Order of this Court.

55.     Plaintiff has shown a likelihood of success on the merits as to the foregoing claims for relief, based on the allegations set forth in this Complaint.

56.     Plaintiff is without an adequate remedy at law in this matter, as dissipation of the fraudulently diverted funds may render the funds practically unrecoverable.

57.     Plaintiff will suffer immediate and irreparable harm if the APM Actors are not enjoined from dissipating assets obtained through the fraud, and if BOA is not directed to freeze

any accounts into which proceeds from the fraudulent diversion of the sales proceeds were placed, including but not limited to the Fraudulent Account.

58. Based on Plaintiff's experience, monies fraudulently diverted are often then transferred overseas, making it impossible to recover the funds from the bad actors.

59. No harm will be suffered from the issuance of an injunction to preserve the monies in the Fraudulent Account, and in any other account at BOA or any other banking institution into which funds were transferred, and any other assets acquired with the proceeds received from the fraudulent conduct. The APM Actors have no legitimate claim to the funds sought to be preserved herein, and therefore cannot suffer harm from the issuance of an injunction.

60. Greater harm will be suffered by Plaintiff if the injunctive relief is not granted.

61. Granting the preliminary relief requested is in the public interest, as the APM Actors have no right to benefit from the fraudulently diverted funds at the expense of the legitimate parties to the transaction and such conduct should properly be prohibited.

62. Plaintiff respectfully requests that this Court issue an Order: (1) enjoining the APM Actors from engaging in any activity in connection with the funds in the Fraudulent Account at BOA and freezing that account, and any other account at BOA or any other banking institution into which funds were transferred, so as to preclude the APM Actors from withdrawing any monies from those accounts until further Order of Court; (2) enjoining BOA from permitting any withdrawals or transfers of funds in the accounts pending further Order of this Court; (3) enjoining the APM Actors from utilizing, transferring, or in any manner disposing of any other assets which might have been acquired with the funds fraudulently obtained as set forth in this Complaint; and (4) granting such other relief as may be appropriate and necessary.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

1. Impose a constructive trust on the fraudulently obtained funds from the Escrow
   Account, as well as any and all monies or other assets which can be traced to the
   stolen funds;

2. Enter an Order enjoining the APM Actors from engaging in any activity in
   connection with the funds in the Fraudulent Account at BOA and freezing that
   account, and any other account at BOA or any other banking institution into which
   funds were transferred, so as to preclude the APM Actors from withdrawing any
   funds from those accounts until further Order of Court;

3. Enter an Order enjoining BOA from permitting any withdrawals or transfers of
   funds in the Fraudulent Account at BOA, and any other account at BOA into which
   funds were transferred, so as to preclude the APM Actors from withdrawing any
   funds from those accounts until further Order of Court;

4. Enter an Order enjoining the APM Actors from utilizing, transferring, or in any
   manner disposing of any other assets which might have been acquired with the
   funds fraudulently obtained as set forth in this Complaint;

5. Award Plaintiff such compensatory damages against the APM Actors as Plaintiff
   may prove at trial;

6. Award Plaintiff punitive damages for the APM Actors' willful and malicious
   conduct;

7. Award Plaintiff its costs and reasonable attorneys' fees as allowed by law;

8. Allow a trial by jury as to all matters so triable; and

9.   Award Plaintiff such other and further relief as the Court may deem just and proper.


Dated: December 30, 2022                              Respectfully submitted,


                                                     **LEWIS RICE LLC**

                                     By:     /s/Jacqueline K. Graves
                                             John B. Greenberg, #MO40242
                                             Jacqueline K. Graves, #MO64875
                                             Lewis Rice LLC
                                             600 Washington Ave. Suite 2500
                                             St. Louis, Missouri, 63105
                                             Telephone:  314-444-7600
                                             Fax:  314-612-7675
                                             jgraves@lewisrice.com

                                             *Counsel for Fidelity National Title*
                                             *Insurance Company*