# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| FIDELITY NATIONAL TITLE INSURANCE COMPANY<br><br>Plaintiff,<br><br>v.<br><br>APM MANAGEMENT SERVICE'S, LLC, RICHARD C. APPELBAUM, SARAH JANE APPELBAUM, and BANK OF AMERICA, N.A., a nominal defendant,<br><br>Defendants. | Case No. 4:22-cv-01391-JAR<br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED COMPLAINT

COMES NOW Plaintiff Fidelity National Title Insurance Company ("Plaintiff"), by and through its undersigned counsel, pursuant to Fed. R. Civ. P. 15(a)(1)(B), and for its First Amended Complaint against Defendants APM Management Service's, LLC, Richard C. Appelbaum, Sarah Jane Appelbaum, and Bank of America, N.A., states as follows:

### THE PARTIES

1. Plaintiff Fidelity National Title Insurance Company ("Plaintiff") is a Florida corporation with its principal office located at 601 Riverside Avenue, Jacksonville, Florida 32204.

2. Defendant APM Management Service's, LLC ("APM") is a Missouri limited liability company with its principal office (and registered agent Richard C. Appelbaum) located at 11970 Tyra Ct., Maryland Heights, Missouri 63043.

3. Defendant Richard C. Appelbaum ("Mr. Appelbaum") is a citizen of the State of Missouri who resides in the City of Maryland Heights, St. Louis County, Missouri.

4.      Defendant Sarah Jane Appelbaum ("Mrs. Appelbaum") is a citizen of the State of Missouri who resides in the City of Maryland Heights, St. Louis County, Missouri.

5.      Not named as Defendants at this time, John Does 1-99 are persons of unknown identity and citizenship.

6.      Upon information and belief, Mr. Appelbaum is the sole member of APM.

7.      APM, Mr. Appelbaum, Mrs. Appelbaum, and their agents, representatives, and associates shall be referred to herein as the "APM Actors."

8.      Upon information and belief, the acts and omissions alleged to have been engaged in by the APM Actors were done with the express knowledge, consent, and ratification of APM, Appelbaum, Mrs. Appelbaum, and their officers, agents, employees, or representatives, while actively engaged in the management or operation of APM's business or affairs.

9.      Upon information and belief, all of the APM Actors, and each of them, were the agents and/or employees, co-venturers, partners or in some manner agents and/or principals for each other, and at the time of the incidents which form the basis for the Complaint, were acting within the course and scope of said agency and/or employment, with the knowledge, consent, and approval of APM.

10.     Defendant Bank of America, N.A. ("BOA") is a national banking association with its principal place of business located at 100 N. Tryon Street, Charlotte, North Carolina 28255.

11.     BOA has been named as a nominal defendant in this action solely due to the fact that it maintains custody and control over a bank account or accounts where funds from an escrow account controlled by Plaintiff were fraudulently diverted through the use of fraudulent wire instructions and other documents as more fully described below.

2

12. As a nominal defendant, Plaintiff seeks no relief from BOA at this point other than a continuation of the Order currently in place freezing the account into which the monies were fraudulently diverted, and any other account at BOA or any other banking institution into which funds were transferred and enjoining any further banking activity in the accounts until further Order of Court.

## JURISDICTION AND VENUE

13. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 by virtue of violations of federal law, in particular the Computer Fraud and Abuse Act ("CFAA") and the Racketeer Influenced and Corrupt Organizations Act ("RICO").

14. This Court also has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 by virtue of complete diversity of citizenship and because the amount in controversy exceeds $75,000, exclusive of interests and costs.

15. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because Mr. and Mrs. Appelbaum reside in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## BACKGROUND

16. Non-party CP Logistics Marshall Building, 11, LLC, ("CP Logistics") was the owner of real property located at 850 Gateway Global Drive, Byhalia, Mississippi ("the Property").

17. CP Logistics, as lessor, leased a warehouse on the Property to AMAZON.COM SERVICES LLC, pursuant to a Lease Agreement dated April 9, 2021.

18. CP Logistics entered into agreements with AMAZON.COM SERVICES LLC to perform certain improvements to the Property.

19. Non-Party LPC Real Estate Corp. ("LPC"), as buyer, purchased the Property from CP Logistics, as seller, pursuant to a Purchase and Sale Agreement dated December 2, 2021.

20. Under the Purchase and Sale Agreement, CP Logistics agreed to complete the improvements, which are described in the Purchase and Sale Agreement as "Seller's Remaining Improvements."

21. Pursuant to a Construction Escrow Agreement dated December 21, 2021, between CP Logistics, as seller, LPC, as buyer, and Plaintiff as escrow agent, CP Logistics deposited $2,258,278.00 (the "Escrow Funds") into an escrow account controlled by Plaintiff. (A true and correct copy of the Construction Escrow Agreement is attached to this Complaint as Exhibit "A").

22. Upon the satisfactory completion of the Seller's Remaining Improvements, the Escrow Funds were to be released in accordance with the terms of the Escrow Agreement.

## THE FRAUDULENT WIRE INSTRUCTIONS

23. On or about December 8, 2022, Plaintiff received an e-mail from CP Logistics' counsel requesting the release of the Escrow Funds.

24. On December 12, 2022, Plaintiff received another e-mail, allegedly from the office of CP Logistics' counsel, providing wiring instructions for the release of the Escrow Funds (the "Fraudulent Wire Instructions"). (A true and correct copy of the Fraudulent Wire Instructions is attached to this Complaint as Exhibit "B").

25. In fact, the e-mail was not from CP Logistics' counsel, but was from an unknown John Doe impersonating CP Logistics' counsel. Plaintiff believes that agents, associates, or representatives of APM compromised the email accounts of one or more parties to the transaction or their attorneys, resulting in "spoofed" email transmissions from those spoofed accounts.

4

26. The Fraudulent Wire Instructions directed that the Escrow Funds be wired into an account titled in the name of APM maintained at BOA, account number ending 5416 (the "Fraudulent Account").

27. In reliance upon the Fraudulent Wire Instructions, on December 12, 2022, Plaintiff wired the sum of $2,258,274.00 to the Fraudulent Account.

28. To hide the diversion of the Escrow Funds to the Fraudulent Account, the APM Actors created a fraudulent wire confirmation purporting to show the wiring of the Escrow Funds to an account of Seller at JPMorgan Chase Bank, N.A. (A true and correct copy of the fraudulent wire confirmation is attached to this Complaint as Exhibit "C")

29. Subsequent to the transfer of the monies into the Fraudulent Account, Plaintiff was contacted by the Seller which advised that it had not received the released Escrow Funds.  Seller later reviewed the Fraudulent Wire Instructions and informed Plaintiff that the Fraudulent Wire Instructions were fraudulent and that the Fraudulent Account was not an account of Seller.  Seller's counsel also confirmed that the e-mail transmitting the Fraudulent Wire Instructions was not sent from his email account.

30. The compromised computers were computers that were used by the parties in or affecting interstate or foreign commerce or communication and were therefore protected computers under the CFAA.

31. The unauthorized access to these computers and the use of that access to commit fraud is a direct violation of the CFAA.

## THE FUNDS ARE LAUNDERED THROUGH NUMEROUS ACCOUNTS

32. Subsequent to the transfer of the monies into the Fraudulent Account, APM Actors, in concert with John Does 1-99, funneled the monies from the Fraudulent Account into numerous other accounts, and from those accounts into other accounts, and so on.

33. On December 13, 2022, Mr. Appelbaum traveled from his home in St. Louis, Missouri to Chicago, Illinois in order to transfer funds from the Fraudulent Account into other accounts.

34. These accounts include a Bank of America account in Mr. Appelbaum's name ending x0973, a UMB Bank account in APM's name ending x3810, a UMB Bank account in Mr. Appelbaum's name ending x9745, a J.P. Morgan Chase Bank account in Mr. Appelbaum's name ending x9121, a Regions Bank account in Mr. and Mrs. Appelbaum's names ending x0314, as well cryptocurrency exchange accounts with Gemini, MCB Foris, BAM Trading Services, Inc. d/b/a Binance.us, and Bitstamp.

35. After transferring the monies into these accounts, the APM Actors further dissipated Plaintiff's assets by transferring the money from their accounts at the above-described cryptocurrency exchanges into their own cryptocurrency wallets, or those of John Does 1-99.

36. These repeated transfers were done for the purpose of concealing the fact that the Escrow Funds were illegally obtained.

37. At least 20 money transfers (which crossed a state or U.S. boundary in interstate or foreign commerce) of at least $5,000 took place.

38. While Mr. Appelbaum is likely responsible for the majority of these transfers, on information and belief, Mr. and Mrs. Appelbaum share responsibility for at least four of these interstate money transfers of at least $5,000.

39. APM and Mr. and Mrs. Appelbaum further squandered the Escrow Funds through transfers to John Does 1-99, as well as lavish spending on cars, trips, jewelry, clothes, and restaurants.

40. On information and belief, Mrs. Appelbaum used the Escrow Funds to pay a mortgage on her home.

41. At present, the vast majority of the Escrow Funds stolen and squandered by APM and Mr. and Mrs. Appelbaum have dissipated.

## FIRST CLAIM FOR RELIEF
### Violation of the CFAA against APM Actors

42. Plaintiff incorporates by reference all the other allegations contained in this Complaint.

43. The conduct engaged in by the APM Actors constituted a direct violation of the CFAA.  *See* 18 U.S.C. § 1030(a), (c)(4)(A)(i)(I).

44. The CFAA specifically provides that any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator and may obtain compensatory damages and injunctive or other equitable relief.  *See* 18 U.S.C. § 1030(g).

## SECOND CLAIM FOR RELIEF
### Violation of RICO against APM Actors

45. Plaintiff incorporates by reference all the other allegations contained in this Complaint.

46. Mr. Appelbaum and Mrs. Appelbaum associated with an enterprise, the activities of which affect interstate or foreign commerce, consisting of APM Actors, as well as John Does 1-99.

47. This enterprise—the quintessential example of 21st Century organized crime—utilizes cryptocurrency transactions in an attempt to commit untraceable theft.

48. APM Actors directly and indirectly participated in the conduct of the above-described enterprises' affairs through a pattern of racketeering activity, to wit:

49. At least one violation of 18 U.S.C. § 1343 (wire fraud) occurred when APM Actors, having devised a scheme or artifice to defraud or to obtain money by means of false or fraudulent pretenses as described herein, transmitted or caused to be transmitted by means of wire communication in interstate or foreign commerce, a writing, sign, or signal, namely, the Fraudulent Wire Instructions, for the purpose of executing his scheme or artifice.

50. Numerous violations of 18 U.S.C. § 1344 (bank fraud) occurred when APM Actors executed a scheme or artifice to obtain monies, funds, or assets under the custody or control of banks listed above by means of false or fraudulent pretenses or representations, namely, the representations to the banks upon depositing and withdrawing funds that the funds were rightfully theirs.

51. Numerous violations of 18 U.S.C. § 1956 (money laundering) occurred when APM Actors, knowing that the property involved in the numerous financial transactions described herein represented the proceeds of some form of unlawful activity, namely wire and bank fraud, conducted or attempted to conduct such financial transactions which in fact involved the proceeds of specified unlawful activity, namely wire and bank fraud, knowing that the transactions were designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the unlawful activity, namely wire and bank fraud.

52. Numerous violations of 18 U.S.C. § 2314 (transportation of stolen monies) occurred when APM Actors transmitted or transferred in interstate or foreign commerce money,

of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud, as described above.

53. Numerous violations of 18 U.S.C. § 2315 (sale or receipt of stolen monies) occurred when APM Actors received, possessed, concealed, stored, bartered, sold, or disposed of money of the value of $5,000 or more, which crossed a State or United States boundary after being stolen, unlawfully converted, or taken, knowing the same to have been stolen, unlawfully converted, or taken, as described above.

54. As a proximate result of these RICO violations, Plaintiff suffered and continues to suffer the loss of millions of dollars.

55. Plaintiff seeks treble damages.

### THIRD CLAIM FOR RELIEF
### Fraud against APM Actors

56. Plaintiff incorporates by reference all the other allegations contained in this Complaint.

57. The APM Actors made false representations to Plaintiff through their sending of the Fraudulent Wire Instructions and False Contact Information. Specifically, in sending the Fraudulent Wire Instructions, the APM Actors represented that Plaintiff could transfer the funds from the Escrow Account into the Fraudulent Account in fulfillment of Plaintiff's obligations under the Escrow Agreement. Further, by providing the False Contact Information, the APM Actors perpetuated the falsehood that the wiring information was legitimate. The dates, speakers, and content of the false statements are described with particularity above.

58. Upon information and belief, each false statement made in connection with the Fraudulent Wire Instructions and False Contact Information was knowingly made and was designed to defraud Plaintiff.

9

59. Plaintiff was in fact deceived by the APM Actors' false statements and actions.

60. Plaintiff reasonably relied upon the APM Actors' false statements and actions to its detriment.

61. The misrepresentations made by the APM Actors were material in that Plaintiff would not have wired the funds to the Fraudulent Account but for the Fraudulent Wire Instructions and False Contact Information.

62. The APM Actors' false statements and actions have directly and proximately damaged Plaintiff in an amount to be determined at trial, but that is not less than $75,000.00.

63. Because of the willful or wanton conduct of the APM Actors as described above, the APM Actors are liable to Plaintiff for both compensatory and punitive damages.

## FOURTH CLAIM FOR RELIEF
### Conversion against APM Actors

64. Plaintiff incorporates by reference all the other allegations contained in this Complaint.

65. Plaintiff previously had in its possession the funds which it held in escrow subject to an escrow agreement.

66. APM Actors converted to its possession the escrow funds by the fraud and subsequent uses described herein.

67. Plaintiff has demanded repayment and been refused.

## FIFTH CLAIM FOR RELIEF
### Unjust Enrichment against APM Actors

68. Plaintiff incorporates by reference all the other allegations contained in this Complaint.

69. Plaintiff conferred a benefit on the APM Actors when it wired the escrow funds to the Fraudulent Account.

70. The APM actors accepted and received the funds.

71. The APM Actors retained the funds and have not repaid them to Plaintiff

72. It would be unjust and inequitable for the APM Actors to retain the funds without repayment in light of the fraud described herein.

73. Plaintiff has demanded repayment and been refused.

## SIXTH CLAIM FOR RELIEF
### Money Had and Received (Assumpsit) against APM Actors

74. Plaintiff incorporates by reference all the other allegations contained in this Complaint.

75. Plaintiff (albeit without knowing their true identity) paid the APM Actors $2,258,278.00, which amount was retained by defendants.

76. It would be unjust and inequitable for the APM Actors to retain the funds because said payment was a result of the APM Actors' fraud.

## SEVENTH CLAIM FOR RELIEF
### Civil Conspiracy against APM Actors

77. Plaintiff incorporates by reference all the other allegations contained in this Complaint.

78. The APM Actors agreed to accomplish the unlawful acts described herein to further their scheme to steal from Plaintiff, and Plaintiff has been damaged as a result.

## EIGHTH CLAIM FOR RELIEF
### Constructive Trust and Equitable Lien against all Defendants

79. Plaintiff incorporates by reference all the other allegations contained in this Complaint.

80. The APM Actors improperly and without authorization obtained the funds from the Escrow Account.

81. The APM Actor's fraudulent conversion of the funds was wrongful, as the intent of the fraudulent actions was to deprive the rightfully entitled party of the funds from the Escrow Account and to expose Plaintiff to a risk of loss for the transfer of the proceeds to the Fraudulent Account.

82. As a result of the wrongful conduct of the APM Actors, a constructive trust is warranted over the funds transferred into the Fraudulent Account, the funds in any other account at BOA or any other banking institution into which funds were transferred, and any assets acquired with, or traceable to these stolen funds.

83. On information and belief, an unknown quantity of funds obtained unlawfully from Plaintiff can be traced to APM Actors' present share of the equity in any assets acquired with, or traceable to these stolen funds.

84. On information and belief, the APM Actors, therefore, hold an unknown share of equity in the various property held in constructive trust for Plaintiff, the victim of APM Actors' fraudulent, deceptive, and unlawful conduct, and by virtue thereof Plaintiff is entitled to have an equitable lien declared in its favor in and on the various property.

85. Moreover, a constructive trust is warranted over any remaining funds in the Fraudulent Account and any other account at BOA into which funds were transferred.

86. BOA should be declared a constructive trustee of the monies remaining in the Fraudulent Account and any other account at BOA into which funds were transferred.

87. Accordingly, Plaintiff respectfully requests that the Court impose a constructive trust—and declare an equitable lien as appropriate—on the fraudulently obtained funds, as well as

any and all monies or other assets which can be traced to the stolen funds; direct BOA to maintain possession of any and all such proceeds pending further Order of this Court; and granting Plaintiff such other relief as may be just and proper.

## NINTH CLAIM FOR RELIEF
**Constructive Trust and Equitable Lien against Mrs. Appelbaum**

88. Plaintiff incorporates by reference all the other allegations contained in this Complaint.

89. On or about February 25, 2013, Mrs. Appelbaum, a/k/a Sarah Jane Marie Jansen, purchased the property known as Lot 198 of Meadowpark Plat Two, a Subdivision in St. Louis County, Missouri, according to the Plat thereof Recorded in Plat Book 158 Page(s) 60 of the St. Louis County Records.

90. Mrs. Appelbaum a/k/a Sarah Jane Marie Jansen, is presently the record fee owner of the Property.

91. A Deed of Trust exists on the Property for the benefit of lender Secretary of Housing and Urban Development.

92. On information and belief, Mrs. Appelbaum made a payment or payments due under the Deed of Trust with funds obtained directly from Plaintiff by theft, conversion, or fraud as described herein.

93. On information and belief, an unknown quantity of funds obtained unlawfully from Plaintiff can be traced to Mrs. Appelbaum's present share of the equity in the Property.

94. On information and belief, Mrs. Appelbaum, therefore, holds an unknown share of equity in the property held in constructive trust for Plaintiff, the victim of her fraudulent, deceptive, and unlawful conduct, and by virtue thereof Plaintiff is entitled to have an equitable lien declared in its favor in and on the Property.

95. Plaintiff seeks a determination by the Court of the amount of funds held in constructive trust and as an equitable lien on the Property and an order compelling Mrs. Appelbaum to liquidate the funds held in such constructive trust and deliver such funds to Plaintiff and that the Court declare an equitable lien on the Property for the benefit of Plaintiff in the amount of the funds held in trust.

## TENTH CLAIM FOR RELIEF
### Request for Injunction

96. Plaintiff incorporates by reference all the other allegations contained in this Complaint.

97. The APM Actors acquired the monies from the Escrow Account by fraudulent means.

98. Based on the manner in which the proceeds were diverted, it is likely that the APM Actors will dissipate the funds in the Fraudulent Account if not enjoined from doing so, making it difficult, if not impossible, to recover the converted funds.

99. This Court has the authority to issue an injunction to enjoin the dissipation of funds.

100. The CFAA specifically provides for the award of injunctive relief.

101. The APM Actors must be enjoined from utilizing or transferring any funds received as a result of the fraudulent conduct, and from utilizing or transferring any other funds or assets acquired with the funds received as a result of the fraudulent conduct, including the funds in the Fraudulent Account at BOA.

102. BOA should be enjoined from allowing the distribution of any monies in the Fraudulent Account and any other account at BOA into which funds were transferred without Order of this Court.

103. Plaintiff has shown a likelihood of success on the merits as to the foregoing claims for relief, based on the allegations set forth in this Complaint.

104. Plaintiff is without an adequate remedy at law in this matter, as dissipation of the fraudulently diverted funds may render the funds practically unrecoverable.

105. Plaintiff will suffer immediate and irreparable harm if the Court order enjoining APM Actors from dissipating assets obtained through the fraud, and directing BOA to freeze any accounts into which proceeds from the fraudulent diversion of the sales proceeds were placed, including but not limited to the Fraudulent Account, is not maintained.

106. Based on Plaintiff's experience, monies fraudulently diverted are often then transferred overseas, making it impossible to recover the funds from the bad actors.

107. No harm will be suffered from the issuance of an injunction to preserve the monies in the Fraudulent Account, and in any other account at BOA or any other banking institution into which funds were transferred, and any other assets acquired with the proceeds received from the fraudulent conduct. The APM Actors have no legitimate claim to the funds sought to be preserved herein, and therefore cannot suffer harm from the issuance of an injunction.

108. Greater harm will be suffered by Plaintiff if the injunctive relief is not granted.

109. Granting the preliminary relief requested is in the public interest, as the APM Actors have no right to benefit from the fraudulently diverted funds at the expense of the legitimate parties to the transaction and such conduct should properly be prohibited.

110. Plaintiff respectfully requests that this Court issue an Order: (1) enjoining the APM Actors from engaging in any activity in connection with the funds in the Fraudulent Account at BOA and freezing that account, and any other account at BOA or any other banking institution into which funds were transferred, so as to preclude the APM Actors from withdrawing any monies

from those accounts until further Order of Court; (2) enjoining BOA from permitting any withdrawals or transfers of funds in the accounts pending further Order of this Court; (3) enjoining the APM Actors from utilizing, transferring, or in any manner disposing of any other assets which might have been acquired with the funds fraudulently obtained as set forth in this Complaint; and (4) granting such other relief as may be appropriate and necessary.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

1. Impose a constructive trust on the fraudulently obtained funds from the Escrow Account, as well as any and all monies or other assets which can be traced to the stolen funds;

2. Enter an Order enjoining the APM Actors from engaging in any activity in connection with the funds in the Fraudulent Account at BOA and freezing that account, and any other account at BOA or any other banking institution into which funds were transferred, so as to preclude the APM Actors from withdrawing any funds from those accounts until further Order of Court;

3. Enter an Order enjoining BOA from permitting any withdrawals or transfers of funds in the Fraudulent Account at BOA, and any other account at BOA into which funds were transferred, so as to preclude the APM Actors from withdrawing any funds from those accounts until further Order of Court;

4. Enter an Order enjoining the APM Actors from utilizing, transferring, or in any manner disposing of any other assets which might have been acquired with the funds fraudulently obtained as set forth in this Complaint;

5. Determine the amount of funds held in constructive trust and as an equitable lien on the Property and issue an order compelling Mrs. Appelbaum to liquidate the funds held in such

constructive trust and deliver such funds to Plaintiff and declaring an equitable lien on the Property for the benefit of Plaintiff in the amount of the funds held in trust;

6. Award Plaintiff such compensatory damages against the APM Actors as are fair and reasonable;

7. Award Plaintiff punitive damages for the APM Actors' willful and malicious conduct;

8. Award Plaintiff treble damages as allowed by RICO;

9. Award Plaintiff its costs and reasonable attorneys' fees as allowed by law;

10. Allow a trial by jury as to all matters so triable; and

11. Award Plaintiff such other and further relief as the Court may deem just and proper.

Dated: February 10, 2023										Respectfully submitted,


**FOX ROTHSCHILD, LLP**

By:	/s/  John A. Wait
	John A. Wait, admitted pro hac vice
	Fox Rothschild LLP
	101 Park Avenue, 17th Floor
	New York, NY 10018
	Tel: (212) 878-7900
	Fax: (212) 692-0940
	jwait@foxrothschild.com

**LEWIS RICE LLC**

By:	 /s/Jacqueline K. Graves
	John B. Greenberg, #MO40242
	Jacqueline K. Graves, #MO64875
	Lewis Rice LLC
	600 Washington Ave. Suite 2500
	St. Louis, Missouri, 63105
	Telephone:  314-444-7600
	Fax:  314-612-7675
	jgreenberg@lewisrice.com
	jgraves@lewisrice.com

	*Counsel for Fidelity National Title Insurance Company*

## CERTIFICATE OF SERVICE

    I hereby certify that on the 10th day of February 2023, a copy of the foregoing was filed electronically via the CM/ECF System. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

                                                    /s/ Jacqueline K. Graves