UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| FIDELITY NATIONAL TITLE INSURANCE COMPANY, </br></br>    Plaintiffs, </br></br> v. </br></br> APM MANAGEMENT SERVICE'S LLC, et. al., </br></br>    Defendants. | ) </br> ) </br> ) </br> ) </br> ) </br> ) Case No. 4:22-cv-01391-JAR </br> ) </br> ) </br> ) </br> ) </br> ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' memorandum regarding the application of spousal privileges during the deposition of Defendant Sarah Appelbaum, wife of Defendant Richard Appelbaum. (ECF No. 115). After reviewing the memorandum and Plaintiff's memorandum in opposition, the Court holds that the marital communications privilege is applicable to this case, although the joint participant exception to the martial communications privilege may limit its applicability. The Court further holds that the adverse testimonial privilege is not applicable to this case.

**Background**

This case concerns the alleged fraudulent diversion of $2,258,274.00 from the escrow account of Plaintiff Fidelity National Title Insurance Company ("Fidelity") to Defendants APM Management Service's, LLC ("APM"), Richard Appelbaum, and Sarah Appelbaum. (ECF No. 76, First Amended Complaint or "FAC"). The funds were first fraudulently diverted to an account with former nominal defendant Bank of America ("BoA"). Upon Fidelity's request, the Court entered a Temporary Restraining Order ("TRO") freezing the account. (ECF No. 14). After

conducting limited discovery, Fidelity learned the majority of the funds had been further diverted to other accounts, including cryptocurrency exchanges, or withdrawn. (ECF No. 39). On Fidelity's consent motion, the Court entered preliminary injunctions freezing the accounts allegedly containing portions of the diverted funds. (ECF No. 35; 43; 79; 105). However, Fidelity contends it has not yet traced all of the missing $2,258,274.00, and that it must conduct further investigation into the ownership of identified accounts. (ECF No. 109).

In pursuit of these missing funds, Fidelity seeks to depose Mrs. Appelbaum. Defendants objected to this discovery, based on Mrs. Appelbaum's pending motion to dismiss. (ECF No. 106). After a status conference with the parties, the Court denied the motion to stay and permitted Fidelity to take a limited deposition of Mrs. Appelbaum as to the transfer of the missing funds. (ECF No. 114). The Court also permitted the parties to file expedited briefing on the applicability of the martial communication privilege and adverse testimonial privilege. *Id.* Defendants filed their brief in support of the application of both privileges on March 31, 2023, and Fidelity responded shortly thereafter. (ECF No. 115, 116).

**Discussion**

In federal court, Federal Rule of Evidence 501 governs evidentiary privileges. *See Rice v. St. Louis University*, Case No. 4:19-cv-03166 SEP, 2020 WL 6158029, at *2 (E.D. Mo. Oct. 21, 2020). Rule 501 does not outline any specific privileges, but instead directs courts to examine the common law, "as interpreted by United States courts in the light of reason and experience[.]" Fed. R. Evid. 501. Nevertheless, federal common law recognizes a privilege only in "rare situations." *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 918 (8th Cir. 1997). Testimonial exclusionary privileges "contravene the fundamental principle that the public has a right to every man's evidence." *Trammel v. United States*, 445 U.S. 40, 50 (1980) (internal citations omitted).

Thus, courts must strictly construe such privileges, and permit them only when the exercise of the privilege has a "public good" outweighing the need for "ascertaining truth." *Id.* (internal quotations and marks omitted). Courts must make this determination on a case-by-case basis. *See id* at 47 (quoting 120 Cong. Rec. 40,891 (1974) and holding that the purpose of Rule 501 was to allow Courts the flexibility to develop privilege rules on a "case-by-case basis"); *see also Rice*, 2020 WL 6158029, at *7 (finding that the need for truth outweighed the protection of marital communications).

I.   **The Marital Communications Privilege**

Defendants argue that Mrs. Appelbaum should be able to raise two different spousal privileges during her deposition: the marital communication privilege and the adverse testimonial privilege. (ECF No. 115). The martial communications privilege is well-established in the civil context, and it protects communications made within the confines of the marriage. *Id.* at 2. Fidelity does not dispute that the marital communications privilege is applicable to this civil case. (ECF No. 116 at 6). However, it points out that the joint participant exception forbids its application in criminal cases where both spouses participated in a crime. *Id.* Fidelity alleges that both Mr. and Mrs. Appelbaum participated in the fraudulent diversion of its funds. *Id.* Thus, Fidelity argues that the joint participant exception to the marital communications privilege should also apply. *Id.* at 7.

The marital communications privilege protects a spouse from testifying as to "private intra-spousal communications." *United States v. Evans*, 966 F.2d 398, 401 (8th Cir. 1992). These communications are presumptively confidential. *See Blau v. United States*, 340 U.S. 332, 333 (1951). To raise this privilege, the proponent must show (i) that a communication occurred, by word or act; (ii) that the communication occurred between spouses currently in a lawful marriage;

3

and (iii) that the communication was made in confidence. *Evans*, 966 F.2d at 401. The privilege applies in civil cases. *See, e.g., Rice*, 2020 WL 6158029, at *6 (considering whether the proponent had waived the privilege in a civil case). The parties concede that Mrs. Appelbaum is validly married to Mr. Appelbaum, and she may raise the privilege during her deposition, subject to a determination as to whether the privilege applies to a particular question or answer given the facts of the case.[1] The question remaining before the Court is whether such communications would fall within the joint participant exception to the marital communications privilege.

The joint participant exception to the marital communications privilege is "widely accepted." *See Evans*, 966 F.2d at 401 (internal quotations omitted). The exception permits testimony regarding confidential marital communications "involving future or ongoing crimes in which spouses were joint participants at the time of the communications." *Id.* Though the Eighth Circuit has found the rationale for the exception "compelling," it has limited its application to "patently illegal activity." *Id.* (citing *United States v. Sims*, 755 F.2d 1239, 1243 (6th Cir.), *cert. denied*, 473 U.S. 907 (1985)). The Eighth Circuit has narrowly constructed this rule, and as such, it applies only when the public's interest in discovering the truth about criminal activity outweighs the public's interest in protecting the privacy of marriage. *Id.* (citing *Sims*, 755 F.2d at 1243; *The Future Crime or Tort Exception to Communications Privileges*, 77 HARV. L. REV. 730, 734 (1964)). Although every Eighth Circuit case considering the exception has been criminal, the Eighth Circuit has not foreclosed the application of the joint participant exception in civil cases in which the balance of the interests meets this rationale.[2] Thus, the joint participant exception to the

---

[1] Though private communications between spouses are generally presumed confidential, that presumption may be overcome by the non-confidential nature of the message or the circumstances under which the communication was made. *See United States v. Ellis*, NO: 4:13CR001331-03, 04 SWW, 2015 WL 8967855, at *4 (E.D. Ark. Dec. 15, 2015) (citing *Fowler v. United States*, 352 F.2d 100, 113 (8th Cir. 1965)).

[2] The rationale for the joint participant exception, as adopted by the Eighth Circuit in *Evans*, is that "unambiguously illegal" activity is "outside the area of desired husband-wife intimacy." *The Future Crime or Tort*

marital communications privilege may apply to a civil case, if the Court finds that the facts of that case[3] and the communications support finding that the public's interest in marital privacy is less than its interest in ascertaining the truth of a crime.

Fidelity alleges that Defendants "directly and indirectly" participated in a pattern of racketeering activity in violation of 18 U.S.C. §§ 1343, 1344, 1956, 2314, and 2315 (the "RICO violations"). FAC at 8-9. As Fidelity alleges that all Defendants participated in the RICO violations, it contends that Mr. and Mrs. Appelbaum jointly contributed to this illegal conduct. The Court therefore holds that Fidelity may elicit testimony from Mrs. Appelbaum related to any patently illegal activity, as the public's interest in ascertaining the truth of any potential crime outweighs its interest in marital privacy.

## II.  The Adverse Testimonial Privilege

A spouse may raise the adverse testimonial privilege to avoid testifying adversely to a spouse's interests, and though most commonly raised in a criminal case, Defendants argue that it is also applicable in civil cases. *Id.* at 4. Defendants concede that there is a circuit split on the issue, and that the Eighth Circuit has not decided the adverse testimonial privilege's applicability to civil cases. *Id.* at 3. Nevertheless, even if the privilege is not applicable to civil cases generally, Defendants argue Mrs. Appelbaum should be able to raise the privilege here because Fidelity has accused Defendants of criminal activity. *Id.* at 5. Thus, according to Defendants, this civil case is

---

*Exception to Communications Privileges*, at 734. The balance of public interests that permits the joint participant exception is thus less that the public's interest in ascertaining the truth of criminal activities is greater in criminal prosecutions, and more that the married couple's interest in privacy is weakened when the spouses jointly participate in a crime. *See, id.*

[3]   Though the exception applies only to communications regarding "patently illegal" conduct, the party alleging the application of the exception does not need to establish with certainty that the spouses engaged in this activity. Instead, allegations of joint participation in a crime are sufficient, as further fact-specific inquiry into whether a crime was committed would "violate the providence of the jury." *United States v. Dowdy*, 738 F.Supp.1283, 1285 n.3 (W.D. Mo. 1990).

sufficiently connected to a government criminal proceeding for Mrs. Appelbaum to raise the adverse testimonial privilege. *Id.* at 6.

Fidelity contends that the adverse testimonial privilege is inapplicable in civil proceedings. (ECF No. 116 at 3). Fidelity argues that this case is not ancillary to a criminal case, as it does not seek to recover a penalty under any criminal forfeiture provision. *Id.* at 5. Additionally, Fidelity points out that the adverse testimonial privilege does not extend to "objective facts", and argues that the whereabouts of the funds are objective facts which do not implicate criminal intent. *Id.* at 6. In the alternative, Fidelity asserts that the joint participant exception also precludes application of the adverse testimonial privilege. *Id.*

The adverse testimonial privilege protects one spouse from being compelled to testify adversely against the other spouse's interests. *See United States v. Thornton*, Nos. 13-mc-86 (SRN/TNL), 13-mc-87 (SRN/TNL), 2014 WL 4210125, at *9 (D. Minn. Apr. 9, 2014) (internal citations omitted). Though this privilege has its roots in civil law, *see Stein v. Bowman*, 38 U.S. 209 (1839), modern court decisions have significantly limited the application of the privilege in non-criminal cases. *See, e.g., Funk v. United States*, 290 U.S. 371, 376 (1933) (finding that the privilege had been modified "partially by legislation and partially by judicial construction"); *Hawkins v. United States*, 358 U.S. 74, 77 (1958) (holding that the privilege is applicable only "in a trial where life or liberty is at stake"); *Trammel*, 445 U.S. at 51 (describing the need for probative evidence in the "administration of criminal justice" and the determination to protect the marital harmony of "an accused"). Though the Supreme Court and Circuit Courts, including the Eighth Circuit, have not definitively stated that the adverse testimonial privilege is inapplicable to civil cases, it is "not necessary to fully defend the civil-criminal distinction in order to reject [application of the] privilege in a civil case." *Ryan v. Commissioner of Internal Revenue*, 568 F.2d 531, 544

(7th Cir. 1977); *see also, United States v. Yeardi*, 192 F.3d 14, 19 (1st Cir. 1999) (noting that the "possible role" of the adverse testimonial privilege in civil cases is "unclear"); *In re Snoonian*, 502 F.2d 110, 112 (1st Cir. 1974) (holding that the adverse testimonial privilege applies in grand jury proceedings, even though the proceedings were not a criminal trial). The determining question for whether the adverse testimonial privilege applies to a case is not whether the case is criminal or civil, but whether the desired testimony in the particular case raises a threat to the spouse's penal interests.[4] *See In re Martenson*, 779 F.2d 461, 464 (8th Cir. 1985) (finding that a wife must testify against her husband in a civil wrongful levy action against the United States, in which the husband's mother was the plaintiff, because the case implicated only the husband's property interests, rather than his penal interests); *see also United States v. Cauwenberghe*, 827 F.2d 424, 431 (9th Cir. 1987) (refusing to recognize the adverse testimonial privilege where the witness failed to demonstrate the testimony was adverse to her spouse's penal interests), *cert denied*, 484 U.S. 1042 (1988); *In re Grand Jury Proceedings*, 664 F.2d 423, 429-430 (5th Cir. 1981) (holding similarly), *cert. denied*, 455 U.S. 1000 (1982); *In re Grand Jury (Malfitano)*, 633 F.2d 276, 280 n.6 (3d Cir. 1980) (holding similarly). The testimony the proponent hopes to protect must therefore be "intimately connected" with a prospective criminal prosecution, even if the case is civil in nature. *See Thornton*, 2014 WL 41210125, at *9 (citing *In re Martenson*, 779 F.2d at 463-464).

The burden of demonstrating that a spouse's penal interests are at risk is high. The privilege applies only where the non-witness spouse's legal interests may be disfavored "in the very case" in which the testimony is to be offered. *United States Securities and Exchange*

---

[4] The Supreme Court previously proposed that spousal privileges be restricted to criminal proceedings in Proposed Federal Rule of Evidence 505(a). *See Trammel*, 445 U.S. at 47. Though this rule was not adopted, it provides guidance for interpreting the scope of the adverse testimonial privilege. Indeed, the notes of the Judiciary Committee to Rule 501 explain that "the action of Congress should not be understood as disapproving any recognition…of the enumerated privileges contained in the Supreme Court Rules." Fed. R. Evid. 501, Notes of Committee on the Judiciary, Senate Report No. 93-1277 (encouraging reading the rule as "reflecting the view that the recognition of a privilege based on a confidential relationship…should be determined on a case-by-case basis").

*Commission v. Collector's Coffee, Inc.*, 19 Civ. 4355 (LGS), 2019 WL 8647777, at *2 (S.D.N.Y. Jun. 19, 2019) (rejecting the application of the privilege in a civil case in which the plaintiff wanted to elicit the testimony to locate and freeze assets pursuant to a TRO). The limited exception to this rule arises when a plaintiff is "manifestly seeking" to use a spouse's testimony in one proceeding against them in a related proceeding. *Id.* (citing *United States v. Premises Known as 281 Soysset Woodbury Rd.*, 71 F.3d 1067, 1071 (2d Cir. 1995)).

Fidelity raises allegations of criminal activity in its FAC. However, the allegation of criminal violations alone is insufficient for application of the privilege, as Mrs. Appelbaum must show that her testimony would endanger Mr. Appelbaum's penal interests in this case. *See Collector's Coffee, Inc.*, 2019 WL 8647777, at *2. Defendants point out that Fidelity has referred this matter to the federal authorities, and that there is now an on-going grand jury investigation into the facts of this case. (ECF No. 115 at 5). Nevertheless, no party has presented evidence that Fidelity or the government is "manifestly seeking" to use Mrs. Appelbaum's testimony in this proceeding against Mr. Appelbaum at the grand jury proceedings. Without such evidence, or without evidence of a threat to Mr. Appelbaum's penal interests in this case, the adverse testimonial privilege is inapplicable.

Even if the adverse testimonial privilege would apply, the Court finds that the joint participant exception could also bear on this privilege. Circuit courts are split on whether the joint participant exception applies to the adverse testimonial privilege. The Second, Third, Ninth, and Tenth Circuits have refused to recognize the exception in this context. *See United States v. Pineda-Mateo*, 905 F.3d 13, 17 (10th Cir. 2018); *United States v. Ramos-Oseguera*, 120 F.3d 1028, 1042 (9th Cir. 1997), overruled on other grounds by *United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000); *In re Grand Jury Subpoena*, 755 F.2d at 1026-1028, (2d Cir. 1985), rev.d on other grounds

by *United States v. Koecher*, 475 U.S. 133 (1986); *Appeal of Malfitano*, 633 F.2d 276, 278-280 (3d Cir. 1980). In contrast, the Seventh Circuit recognizes the joint participant exception to the adverse testimonial privilege. *See United States v. Clark*, 712 F.2d 299, 300-302 (7th Cir. 1983) (internal citations omitted); *United States v. Van Drunen*, 501 F.2d 1393, 1397 (7th Cir. 1974). Whereas the Circuit courts deciding against the exception reason that the decision to engage in criminal activity does not undermine the validity of a marriage, the Seventh Circuit points out that the privilege should be limited to "those cases where…a spouse who is neither a victim nor a participant observes evidence o the other spouse's crime[.]" *Clark*, 712 F.2d at 301 (internal quotations and marks omitted). The Seventh Circuit reasons that the underlying goal of the privilege, to preserve the sanctity of the marriage, does "not justify assuring a criminal that he or she could enlist the aid of a spouse in a criminal enterprise without fear that by recruiting an accomplice the criminal was creating another potential witness[.]" *Id.*

The Court finds the Seventh Circuit's reasoning persuasive,[5] and holds that the joint participant exception would apply to Mrs. Appelbaum's testimony if her testimony as to the funds were protected by the adverse testimonial privilege. The FAC implicates Mrs. Appelbaum in the alleged diversion of these funds in concert with her husband. As such, the joint participant exception applies, and, to the extent that Fidelity inquires into this activity, it may elicit this testimony through the joint participant exception to the adverse testimonial privilege.

Accordingly,

---

[5] This reasoning is particularly persuasive in light of the public's increased interest in ascertaining the truth in cases concerning organized crime. *See Pineda-Mateo*, 905 F.3d 13, 22 (citing *Callanan v. United States*, 364 U.S. 587, 593 (1961) and describing the government's argument that a collective criminal agreement "presents a greater potential threat to the public than individual derelicts"). *See also* HR Rep. No. 1030, 98th Cong. 2d Sess. at 206-207 (1984) (giving the government the broad power to conduct discovery to locate assets in RICO cases, as organized crime figure have established a pattern of placing assets in the hands of family to avoid forfeiture).

**IT IS HEREBY ORDERED** that Defendant Sarah Appelbaum may raise the marital communications privilege during her deposition, though its applicability shall be determined on a question-by-question basis. However, any application of the marital communications privilege is subject to the joint participant exception.

**IT IS FURTHER ORDERED** that Defendant Sarah Appelbaum may raise the adverse testimonial privilege with evidence that the testimony she seeks to protect is adverse to Mr. Appelbaum's penal interests, in accordance with this order, and it's applicability shall be determined on a question-by-question basis. However, any application of the adverse testimonial privilege is subject to the joint participant exception.

Dated this 11th day of April, 2023.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**