UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| FIDELITY NATIONAL TITLE INSURANCE COMPANY, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) )  Case No. 4:22-cv-01391-JAR |
| APM MANAGEMENT SERVICE'S LLC, et. al., | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the Motion of Plaintiff Fidelity National Title Insurance Company ("Fidelity") for a Writ of Prejudgment Attachment for the bank accounts of Defendants Richard Appelbaum, Sarah Appelbaum, or APM Management Service's LLC ("APM") sufficient to satisfy $1,743,344.13 plus interest. (ECF No. 120). Fidelity also asks that the attachment include those assets Defendants own that are in the hands of MGA Global enterprises llc.[1] *Id*. The parties have fully briefed the matter, and it is now ready for disposition.

This case concerns the fraudulent diversion of $2,258,274.00 from an escrow account Fidelity owns to accounts Defendants own. (ECF No. 76, First Amended Complaint or "FAC"). The funds were first transferred to an account with former nominal defendant Bank of America, and upon Fidelity's request, the Court entered a Temporary Restraining Order ("TRO") freezing the account to which the funds were diverted. (ECF No. 14). However, after conducting limited discovery, Fidelity learned that the majority of the funds had been further diverted to other

---

[1] MGA Global enterprises llc is a limited liability company founded on January 7, 2023. (ECF No. 119-1, at 8). Mr. Appelbaum serves as its registered agent. *Id*. In part, Fidelity bases its Motion on a March 1, 2023 transfer from Mr. Appelbaum's account with CNB St. Louis Bank to MGA Global enterprises llc. *Id*.

1

accounts, including cryptocurrency exchanges, or withdrawn. (ECF No. 39). On Fidelity's motion and with Defendants' consent, the Court entered preliminary injunctions freezing the accounts allegedly containing portions of the diverted funds. (ECF No. 105). However, as of February 23, 2023, Fidelity alleges that Mr. Appelbaum has transferred $185,000 to APM bank accounts, into his personal checking account held at CNB STL Bank, and into the two cryptocurrency exchanges Coinbase Inc. and Bittrex Inc. (ECF No. 121 at 2).

Federal Rule of Civil Procedure 64 provides for the prejudgment seizure of property to secure satisfaction of a potential judgment by writ of attachment, pursuant to the law of the state where the court sits. In Missouri, a plaintiff may obtain prejudgment attachment in any civil action, from the time the case is pending through the final judgment. *See* R.S.Mo. § 521.130. A writ of prejudgment attachment is an anticipatory means of impounding a defendant's assets to facilitate the collection of a judgment against him. *See State ex rel. Costco Wholesale Corp. v. Hartenbach*, 267 S.W.3d 725, 727 (Mo. Ct. App. 2008). As relevant here, Missouri law allows for prejudgment attachment when: (i) the defendant is about to remove property from the state, with the intent to defraud, hinder, or delay his creditors; (ii) the defendant fraudulently conveyed or assigned property, in order to hinder or delay his creditors; (iii) the defendant fraudulently concealed, removed, or disposed of his property in order to hinder or delay his creditors; (iv) the defendant is about to fraudulently convey or assign property, in order to hinder or delay his creditors; and (v) the defendant is about to fraudulently conceal, remove, or dispose of his property in order to hinder or delay his creditors. *See* R.S.Mo. § 521.010(5), (7)-(10).

A plaintiff may obtain a writ of attachment in compliance with Missouri Supreme Court Rule 85. Rule 85.03 requires an affidavit for a writ of attachment stating the nature and amount of the claim and including facts showing one or more of the grounds for attachment set forth in §

521.010.  Posting a bond is mandatory, in an amount double that asserted in the affidavit.  R.S.Mo. § 521.050.  In Missouri, attachment proceedings are "special and extraordinary" and the strict compliance with the statutory requirements is essential.  *State ex rel. Froidl v. Tillman*, 662 S.W. 907, 909 (Mo. Ct. App. 1983).  Accordingly, the statutory bond requirement is a "mandatory condition to a plaintiff maintaining an action in attachment."  *Id*.  As long as the requirements are met, issuance of a writ is mandatory.  *See Indep. Elec. Supply Inc. v. MC Power Companies, Inc.*, No. 4:22-cv-00304-RK, 2022 WL 2079714, at *1 (W.D. Mo. Jun. 9, 2022).

Fidelity asserts that Defendants have made repeated transfers of large sums of money to cryptocurrency exchanges, interfering with its attempts to trace the $2,258,274.00, as described in § 521.010(5).  (ECF No. 121 at 3).  Further, Fidelity states that Mr. Appelbaum fraudulently conveyed Fidelity's funds to and from APM's, Mrs. Appelbaum's, and others' accounts, and that Defendants will do so again, based on a pattern of assigning property amongst themselves and others, for the purpose of obfuscating the true owner of the funds in the accounts.  *Id*. at 3-4.  *See* R.S.Mo. § 521.010(7), (9).  Finally, Fidelity claims that Defendants repeatedly transferred funds in a series of smaller transactions, and that they are about to do so again, as indicated by a pattern of spreading the funds across numerous accounts and currencies.  *Id*.; *see also* R.S.Mo. § 521.010(8), (10).  Fidelity outlines its good cause for believing these allegations in an affidavit from Kathleen LaBarge, an officer for Fidelity.  (ECF No. 119-1).  Ms. LaBarge estimates that $1,743,344.13 of the original $2,258,274.00 remains outstanding, and thus represents the amount Fidelity would recover in judgment.  *Id*. at 1-2.  Fidelity notes that it is prepared to post a bond in the amount set by this Court.  (ECF No. 132, at 2).

Defendants contend that attachment is inappropriate as to Mrs. Appelbaum, as they have filed a motion to dismiss the claims against her, which remains outstanding.  (ECF No. 127, at 2).

3

They also note that Ms. LaBarge mentions Mrs. Appelbaum in only one paragraph of her affidavit, when referencing a joint bank account she and Mr. Appelbaum share at Regions Bank. *Id*. As to Mr. Appelbaum, Defendants assert that he believed he was dealing with an officer of Fidelity known as "Ginger Dean", who wired him the funds at issue. *Id*. at 3. They therefore assert that he is also a victim of the scheme to defraud Fidelity, and that attachment is therefore inappropriate. *Id*. at 5. Nevertheless, they agree to attachment for any property which can be traced to the wire transfer, but object to the attachment of property tht he and Mrs. Appelbaum have accumulated outside of the wire transfer. *Id*. Defendants specifically request that the First Community Credit Union be excluded from the attachment, as deposits into that account come only from the Appelbaum's paychecks, a Go Fund Me account set up on Mrs. Appelbaum's behalf, and a $300 line of credit from Credit Fresh. *Id*. Fidelity does agree not to attach a "living account," but notes that the Appelbaums have also suggested they pay living expenses from the Regions Bank account. Fidelity, therefore, asks that Defendants identify a specific account and agree to produce monthly statements from that account to exclude the account from attachment. (ECF No. 132 at 5).

Based on the evidence of fraudulent and spurious diversion of funds by Defendants, the Court will grant Fidelity's motion for writ of attachment as to Mr. Appelbaum's, Mrs. Appelbaum's, and APM's bank accounts at each of the following financial institutions: (i) UMB Bank, N.A.; (ii) JP Morgan Chase, N.A.; (iii) PNC Financial Services Group, Inc.; (iv) CNB STL Bank; (v) Bank of America, N.A.; (vi) Regions Bank; (vii) Evolve Bank & Trust; (viii) Alloya Corporate Federal Credit Union; (ix) First Community Credit Union; (x) Commerce Bank; (xi) Capital One, N.A.; (xii) First Bank; and (xiii) Fifth Third Bank. Regardless of Mrs. Appelbaum's participation in the scheme at issue, there is evidence of co-mingling of the funds in the Regions Bank account and her residence which may be traced to Fidelity's missing funds. Equally, the

4

Court will include the property in First Community Credit Union in the writ of attachment. Missouri law makes no distinction between the attachment of property at issue in a case and the attachment of property the defendants obtained outside of the context of the case. Instead, attachment is intended to assist the plaintiff in satisfying a potential judgment through access to a defendant's real, personal, or mixed property. *See Indus. Loan & Inv. Co. v. Missouri State Life Ins. Co.*, 3 S.W. 2d 1046, 1048 (Mo. Ct. App. 1928) (outlining the purpose of the attachment statute and the property subject to attachment). Given the parties' limited agreement, the Court will exclude one of the Appelbaum's account, which the Appelbaums use for living expenses. The Appelbaums must file a monthly statement to the Court, outlining its use of said funds.

Accordingly,

**IT IS HEREBY ORDERED** that Fidelity's motion for writ of prejudgment attachment is **GRANTED**. (ECF No. 120).

**IT IS FURTHER ORDERED** that Fidelity must deposit a bond in the amount of $3,486,688.26 prior to the Court's issuance of the writ.

**IT IS FINALLY ORDERED** that, on or before **June 6, 2023** Defendants may identify one bank account to be used for living expenses. The Court will exclude that account from the writ of attachment, subject to Defendants providing a monthly accounting for and bank statement of that account.

Dated this 1st day of June, 2023.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**