UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| FIDELITY NATIONAL TITLE<br>INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:22-cv-01391-JAR |
| | ) | |
| APM MANAGEMENT SERVICE'S<br>LLC, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court on Defendants' Motion to Dismiss Sarah Appelbaum (ECF No. 83) and Motion to Dismiss Counts II and VII of the Amended Complaint. (ECF No. 84). The matters have been fully briefed and are now ready for disposition. For the reasons outlined below, the Court will deny the motion to dismiss Ms. Appelbaum. (ECF No. 83). It will grant, in part, and deny, in part, the motion to dismiss Counts II and VII. (ECF No. 84).

**Background**

The following facts are taken from Plaintiff's First Amended Complaint, (ECF No. 76), which the Court accepts as true for the purposes of these motions to dismiss. (ECF No. 83, 84). This case concerns the alleged fraudulent diversion of $2,258,274.00 (the "escrow funds") from the escrow account of Plaintiff Fidelity National Title Insurance Company ("Fidelity") to Defendants APM Management Service's, LLC ("APM"), Richard Appelbaum, and Sarah Appelbaum. (ECF No. 76, First Amended Complaint or "FAC"). On December 8, 2022, Fidelity received an email purportedly from a client's counsel requesting release of certain escrow funds. *Id.* at 4. Fidelity received a second email from the same source on December 12, 2022, providing

1

written instructions as to how to release the funds (the "Fraudulent Wire Instructions"). *Id.* However, the emails were not from Fidelity's client's counsel, but instead from an unknown John Doe, whom Fidelity believes was an APM associate. *Id.* The Fraudulent Wire Instructions directed Fidelity to wire the escrow funds to an account titled in APM's name with Bank of America ("BoA"). *Id.* at 5. Associates of APM, including Mr. and Mrs. Appelbaum, (the "APM Actors") created a fraudulent wire confirmation purporting to show that the funds had instead been wired to an account at JPMorgan Chase Bank. *Id.* Shortly thereafter, the client contacted Fidelity to inform it that it did not receive the escrow funds. *Id.* Upon review of the Fraudulent Wire Instructions, the client informed Fidelity that the instructions were fraudulent.

On December 13, 2022, Mr. Appelbaum traveled from St. Louis to Chicago in order to transfer funds from the BoA account into several other accounts in the name of Mr. and Mrs. Appelbaum. (ECF No. 76 at 6). The APM actors then dissipated these assets further by transferring them into cryptocurrency exchanges, either in their own cryptocurrency wallets or into those of between one and ninety-nine John Does. *Id.* Fidelity contends that Mr. Appelbaum is responsible for the majority of the transfers, though he and Mrs. Appelbaum share responsibility for at least four transfers over $5,000. *Id.* Mr. and Mrs. Appelbaum also spent the escrow funds on cars, trips, jewelry, clothes, and restaurants, while Mrs. Appelbaum used some of the escrow funds to pay a mortgage on her home. *Id.*

Fidelity contends that Mr. and Mrs. Appelbaum associated with an organized crime enterprise consisting of APM actors. (ECF No. 76 at 7). The APM Actors directly and indirectly participated in wire fraud, bank fraud, money laundering, transportation of stolen monies, and the sale or receipt of stolen monies. *Id.* at 8-9. Fidelity alleges that the actions underlying these violations constitute a pattern of racketeering activity. *Id.* at 8.

2

Fidelity filed its FAC on February 10, 2023. (ECF No. 76). In the FAC, Fidelity brings

ten Counts against all defendants: (i) violations of the Computer Fraud and Abuse Act, 18 U.S.C.

§ 1030(a), (c)(4)(A)(i)(I); (ii) violations of the Racketeer Influenced and Corrupt Organizations

Act ("RICO"); (iii) fraud; (iv) conversion; (v) unjust enrichment; (vi) assumpsit; (vii) civil

conspiracy; (viii) constructive trust and equitable lien against all defendants; (ix) constructive trust

and equitable lien against Mrs. Appelbaum; (x) request for injunction. Defendants move to dismiss

the claims against Mrs. Appelbaum and to dismiss Counts II and VII of the FAC. (ECF No. 83,

84).

**Legal standard**

In ruling on a motion to dismiss, the Court assumes all facts alleged in the complaint are

true, and liberally construes the complaint in the light most favorable to the plaintiff. *Eckert v.

Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). The purpose of a motion to dismiss under

Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint. An action

fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a

claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially

plausible if it allows the reasonable inference that the defendant is liable for the conduct alleged.

*See Horras v. Am. Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013); *Braden v. Wal-Mart

Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "Threadbare" recitations of the elements of a claim

supported only by "conclusory statements" will not suffice. *Iqbal,* 556 U.S. at 678 (quoting

*Twombly,* 550 U.S. at 570). Rather, a plaintiff must allege some facts to raise the allegation above

the level of mere speculation. *Id*.

In ruling upon a motion to dismiss, "matters outside the pleadings are not to be considered,

while attachments to the pleadings can be." *Kehoe v. Wal-Mart Stores E., LP*, No. 4:08CV991

3

HEA, 2009 WL 57143, at *2 (E.D. Mo. Jan. 9, 2009); *Enervations, Inc. v. Minnesota Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004). However, documents "necessarily embraced by the complaint" are not matters outside the pleading. *Enervations, Inc.*, 380 F.3d at 1069.

**Discussion**

**I.     Claims against Mrs. Appelbaum**

Defendants assert that Fidelity's FAC fails to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) for a number of reasons. *See* ECF No. 83. While the sufficiency of a complaint is ordinarily analyzed under the general pleading standard of Federal Rule of Civil Procedure 8, all claims "grounded in fraud" must meet the heightened pleading standard of Rule 9. *Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1010 (8th Cir. 2015) (internal citations omitted). Though only one of Fidelity's ten counts is specifically for fraud, the Court analyzes whether the heightened pleading standard of Rule 9 applies by considering whether the circumstances underlying each claim implicate fraud. *Moore v. Compass Group USA, Inc.*, Case No. 4:18-cv-01962-SEP, 2022 WL 4598558, at *8 (E.D. Mo. Sep. 30, 2022) (listing cases). In this case, the allegations underlying each of Fidelity's counts against Mrs. Appelbaum are indicative of fraud because they allege that the use of fraudulent wire instructions and emails in order to convince Fidelity to send the escrow funds to an unintended party. The Court therefore finds Fidelity's claims against Mrs. Appelbaum must conform to Rule 9.

To satisfy Rule 9(b), "the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006). Even

when Rule 9(b) applies, "it does not render the general principles set forth in [Rule 8] entirely inapplicable to pleadings alleging fraud; rather, the two rules must be read in conjunction with each other." Charles Alan Wright & Arthur R. Miller, 5A *Federal Practice and Procedure*, § 1298 (4th ed.). In essence, a plaintiff must plead the "who, what, where, when, and how" of the circumstances constituting fraud. *Ascente Bus. Consulting, LLC v. DR myCommerce*, 9 F.4th 839, 845 (8th Cir. 2021) (citations omitted). A plaintiff must state the underlying basis for its assertions sufficient to prove indicia of reliability. *St. Lukes' Hosp., Inc.*, 441 F.3d at 556. While a plaintiff need not allege specific details of every alleged fraud, the plaintiff must provide some representative examples of the alleged misconduct. *Id.* When the allegations involve multiple defendants participating in the same scheme, a plaintiff satisfies Rule 9(b) by "inform[ing] each defendant of the nature of his alleged participation in the fraud." *Garrett v. Cassity*, No. 4:09CV01252 EWR, 2010 WL 5392767, at *17 (E.D. Mo. Dec. 12, 2010) (internal citations omitted).

### A. *Fidelity's Claim for Constructive Trust*

In Count IX of its FAC, Fidelity requests entry of a constructive trust and equitable lien against Mrs. Appelbaum's property known as Lot 198 of Meadowpark Plat Two, a Subdivision in St. Louis County, Missouri ("Lot 198"). (ECF No. 76 at 13). Defendants first note that many of Fidelity's claims regarding Mrs. Appelbaum are made on "information and belief" and argue these claims are insufficient to support a constructive trust. (ECF No. 83 at 4). These statements include the allegations that Mrs. Appelbaum used the escrow funds to pay her mortgage payments, (ECF No. 76 at para. 41, 92), that an unknown quantity of the funds can be traced to Mrs. Appelbaum's share of the equity in the property, *id.* at para. 93, and that Mrs. Appelbaum therefore holds an unknown share of the property in constructive trust for Fidelity. *Id.* at para. 94. These claims

pertain to Count IX of Fidelity's FAC, its claim for a constructive trust and equitable lien against Mrs. Appelbaum. Defendants argue that these claims are not sufficiently particular under Rule 9. (ECF No. 83 at 5).

In response, Fidelity argues that the claims it made on information and belief are not central to its claims for fraud. (ECF No. 92 at 5). Rather, Fidelity contends that the claims regarding Mrs. Appelbaum's use of the escrow funds to pay her mortgage pertain to Fidelity's requested relief, a constructive trust, rather than to the substance of its claims for fraud. *Id.* Furthermore, even if the claims pleaded on information and belief are subject to Rule 9(b)'s heightened pleading standard, Fidelity contends that it has sufficiently pleaded the reasons underlying each belief, thus meeting that standard. *Id.* Specifically, Fidelity alleges that the escrow funds were wired into family checking accounts, supporting an inference that the funds contributed to payment of the family mortgage. (ECF No. 76 at para. 34).

Courts analyzing fraud cases often consider allegations made on "information and belief" to be "vague and speculative," rather than particular. *See Kettler v. Metropolitan St. Lewis Sewer District*, Case No. 4:22-CV-500 SRW, 2022 WL 17261980, at *5 (E.D. Mo. Nov. 29, 2022) (listing cases). The Eighth Circuit allows for such allegations pleaded under Rule 9(b) when the facts are "peculiarly within the opposing party's knowledge." *Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 421 (8th Cir. 2020). In that circumstance, the complaint must "set forth the source of the information and the reasons for the belief." *Id.* (quoting *Munro v. Lucy Activewear, Inc.*, 899 F.3d 585, 590 (8th Cir. 2018)). The source of the information and the reasons for belief amount to "a statement of facts on which the belief is founded." *Drobnak v. Anderson Corp.*, 561 F.3d 778, 783-784 (8th Cir. 2009); *see also Goldman v. Tapestry, Inc.*, 501 F.Supp.3d 662, 669 (E.D. Mo. 2020) (internal citations omitted) (noting that facts are not

"peculiarly within the opposing party's knowledge" when an investigation prior to filing the complaint would reveal those facts to the plaintiff). When a claim for constructive trust is predicated on fraud, the plaintiff must meet Rule 9(b)'s heightened pleading standards when outlining that claim. *See In re Ruebel*, 423 B.R. 534, 536 (Bankr. N.D. Iowa, 2010).

Fidelity's claim for a constructive trust is predicated on Defendants defrauding Fidelity to access the escrow funds, which Fidelity alleges Mrs. Appelbaum used to pay the mortgage on Lot 198. (ECF No. 76 at para. 92). The Court therefore finds that Rule 9(b)'s particularity requirements apply to Fidelity's claim for a constructive trust. Nevertheless, at this early stage of the litigation, the Court finds that Fidelity's allegation that Ms. Appelbaum paid the mortgage with funds she obtained fraudulently is sufficient to support their claim for a constructive trust. The Court will therefore deny the motion to dismiss Count IX of Fidelity's FAC.

### B. Fidelity's Claims Against Mrs. Appelbaum Generally

Defendants next assert that Fidelity has failed to meet Rule 9(b)'s heightened pleading standards because it alleges fraud against the APM actors generally, rather than against Mrs. Appelbaum specifically. (ECF No. 83 at 5-6). According to Defendants, Fidelity must specify which of the defendants are responsible for specific acts or omissions constituting fraud to meet Rule 9(b)'s particularity requirements. Defendants claim that these allegations are therefore an impermissible "shotgun pleading." *Id.* As the allegations specifically against Mrs. Appelbaum do not indicate fraud, and as the allegations against the APM actors are too general, Defendants argue that the claims against Mrs. Appelbaum must be dismissed.

Fidelity clarifies that the term "APM actors" refers to APM, Mr. Appelbaum, Mrs. Appelbaum, and their agents, representatives, and associates. (ECF No. 92 at 5). Fidelity characterizes the term APM actors as a convenient shorthand to refer to this group of defendants.

7

*Id.* at 6.  It further points out that a plaintiff may not be able to plead the precise role of each defendant when a group acted in concert.  *Id.* (citing *Jackson v. First Fed. Sav. of Ark., F.A.*, 709 F. Supp. 863, 878 (E.D. Ark. 1988)).

The "so-called shotgun pleading" describes more than one type of pleading practice. *Moore*, 2022 WL 4598558, at *8.  In the context of Defendants' arguments, the phrase refers to a pleading bringing "every conceivable claim against every conceivable defendant, resulting in a cause of action so general that it fails to put the various defendants on notice of the allegations against them." *Chole v. Bos. Sci. Corp.*, No. 4:19-CV-02976, at *2 (E.D. Mo. Apr. 13, 2020).  The risk of shotgun pleadings is shifting the burden of identifying the plaintiff's claims onto the defendant. *Sagez v. Global Agr. Investments, LLC*, No. 11-CV-3059-DEO, 2015 WL 1647921, at *4 (N.D. Iowa Apr. 14, 2015) (internal citations omitted).  Plaintiffs may not attribute alleged fraud to "defendants" generally. *Ascente Business Consulting*, 9 F.4th at 846.  However, in cases in which a plaintiff pleads allegations of fraud, courts recognize that a defendant may conceal his or her particular role within a group, and will allow a plaintiff to "leave development of individual liability questions until after some discovery has been taken[.]" *Jackson*, 709 F. Supp. at 878 (listing cases).  Such group pleadings are also permissible when the plaintiff alleges the involvement of a number of John Does. *See Hunter v. Ford Motor Co.*, No. 08-CV-4980 (PJS/JSM), 2009 WL 2215010, at *2 (D. Minn. Jul. 21, 2009).

Fidelity alleges that "APM Actors, in concert with John Does 1-99" funneled the escrow funds into numerous accounts and cryptocurrency exchanges.  (ECF No. 76 at para. 32, 35).  Further in the FAC, Fidelity specifies that Mr. Appelbaum is responsible for "the majority" of these transfers, although Mrs. Appelbaum is also responsible for at least four of the transfers greater than $5,000. *Id.* at para. 38.  Fidelity alleges that Mrs. Appelbaum and APM specifically

8

transferred the escrow funds to John Does 1-99, and spent the funds on cars, trips, jewelry, clothes, and restaurants. *Id.* at para. 39. Defendants argue that the reference to "APM actors" is insufficiently vague as to Mrs. Appelbaum. *See, generally*, ECF No. 83. The Court, however, finds that the FAC sufficiently pleads Mrs. Appelbaum's involvement in the fraud to put her on notice of the allegations against her. That is, Fidelity alleges that she assisted Mr. Appelbaum and APM in dissipating the escrow funds to conceal the fact that they were obtained illegally. Fidelity's reference to "APM actors" is sufficiently particular under Rule 9(b), and the Court will not dismiss the claims against Mrs. Appelbaum on this basis.

Defendants next argue that the FAC fails to allege Mrs. Appelbaum's knowledge or intent, as required to prove fraud. (ECF No. 83 at 6). Rule 9(b) allows for general allegations of knowledge and intent, although it does not give a pleader a license to evade "the less rigid...strictures of Rule 8." *OmegaGenesis Corp. v. Mayo Found. For Med. Educ. & Rsch.*, 851 F.3d 800, 804 (8th Cir. 2017) (internal quotations and marks omitted). The plaintiff must allege sufficient facts from which the Court can reasonably infer the requisite state of mind. *See Furminator, Inc. v. Sergeant's Pet Care Products, Inc.*, No. 4:10CV01829, 2011 WL 1740131, at *2-3 (E.D. Mo. May 5, 2011) (internal citations omitted). The Court may infer a defendant's intent to deceive when a plaintiff pleads a defendant's knowledge of a misrepresentation. *See Brown v. Georgia-Pacific Consumer Products L.P.*, No. 4:10-cv-1005 RWS, 2010 WL 460939, at *2 (E.D. Mo. Nov. 5, 2010) (internal citations omitted).

Fidelity alleges that the "APM actors" knew that the property transferred to various bank accounts and cryptocurrency exchanges was stolen, converted, or taken by fraud. (ECF No. 76 at para. 51-53). It also alleges that Mrs. Appelbaum participated in transferring the escrow funds, and that the transfers were made "for the purpose of concealing the fact" that the escrow funds

9

were illegal obtained. *Id.* at para. 38, 36. Fidelity defines the "APM Actors" as including Mrs. Appelbaum, and thus, alleges that she acted with the fraudulent knowledge and intent applied to all APM actors. The Court can infer from Fidelity's allegations that Mrs. Appelbaum participated in dissipating the escrow funds, that the dissipation of the escrow funds was designed to conceal their illegal origin, and that Mrs. Appelbaum acted with the requisite knowledge and intent for fraud. Thus, the Court denies Defendants' motion to dismiss Mrs. Appelbaum on this basis.

## II.     Fidelity's RICO Claim

"The major purpose behind RICO is to curb the infiltration of legitimate business organizations by racketeers." *Atlas Pile Driving Co. v. DiCon Fin. Co.*, 886 F.2d 986, 990 (8th Cir. 1989) (*citing United States v. Turkette*, 452 U.S. 576, 591 (1981)). RICO, codified at 18 U.S.C. §§ 1961 *et seq.*, provides a civil cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). To state a RICO claim, Fidelity must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985); *H & Q Props., Inc. v. Doll*, 793 F.3d 852, 856 (8th Cir. 2015) (quoting *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009)).

For a pattern to exist, the plaintiff must allege at least two acts of racketeering activity. *See Paragon Partners, Inc. v. EFS Companies, LLC*, Case No. 4:20CV1069 HEA, 2022 WL 4482435, at *14 (E.D. Mo. Sep. 27, 2022) (citing 18 U.S.C. § 1961(5)). There are two issues the Court must keep distinct: whether the plaintiff has sufficiently pleaded acts of racketeering, and whether those acts form a pattern of such activity. *See Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 919 (8th Cir. 2001). The predicate acts must be related, and they must "amount to or pose a threat of continued criminal activity." *Paragon Partners, Inc.*, 2022 WL 4482435, at *14 (citing *United*

*Healthcare Corp. v. American Trade Ins. Co., Ltd.*, 88 F.3d 563, 571 (8th Cir. 1996)).  The relationship element is satisfied if the acts have similar purposes, results, participants, victims, or methods of commission, or are otherwise related by distinguishing characteristics.  *Id.* (internal citations omitted).  The element of continuity is either "closed-ended" or "open-ended."  *Id.* (internal citations omitted).  While closed-ended continuity requires a series of related acts extending over a substantial period of time, open-ended continuity involves acts which inherently threaten repetition.  *Id.* (internal citations omitted).

Defendants argue that the Court must dismiss Count II of Fidelity's FAC, which alleges RICO violations, because Fidelity fails to allege sufficient continuity.  (ECF No. 83 at 8-9).  The allegations in Fidelity's FAC began in December 2022 and occured over a three-month period.  (ECF No. 84 at 3).  Fidelity alleges that Defendants acted only against Fidelity, thus involving only one victim and one transaction of fraud.  *Id.*  Fidelity also failed to allege a risk of long-term or habitual criminal activity.  (ECF No. 99 at 3).  Defendants, therefore, contend that Fidelity failed to allege sufficient enterprise or continuity for a RICO claim.

Fidelity concedes that it does not allege closed-ended continuity.  (ECF No. 92 at 9).  However, it contends that it has sufficiently alleged open-ended continuity.  *Id.*  Fidelity notes that, although the initial act of wire fraud was singular, APM, Mr. Appelbaum, and Mrs. Appelbaum have continued to violate money-laundering and transportation-of-stolen monies statutes.  (ECF No. 76 at para. 39, 41, 49-53).  Fidelity further argues that Defendants likely would have continued their fraudulent behavior had it not been discovered.  (ECF No. 92 at 10-11).

There is open-ended continuity when the predicate acts do not occur in a discreate time frame, do not pertain to a particular event, and are replicable.  *See UMB Bank, N.A. v. Benton*, No. 21-00832-CV-W-BP, 2022 WL 16753765, at *9 (W.D. Mo. Jun. 29, 2022), appeal filed (8th Cir.

Nov. 7, 2022).   Schemes which require regular maintenance, such as selling a fraudulent "insurance" to a neighborhood's storekeepers to prevent the same seller from breaking the shops' windows, are considered open-ended. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 242 (1989). Likewise, when a defendant operates a long-term association which exists for criminal purposes, and the predicate acts are a "regular way" of conducting that business, there is open-ended continuity. *Id.* at 242-243.   The Court may consider both the acts underlying the alleged fraud, as well as schemes to conceal that fraud when analyzing the existence of continuity. *See Handeen v. Lemaire*, 112 F.3d 1339, 1352 (8th Cir. 1997).

Fidelity alleges that Defendants engaged in the following predicate acts: (i) wire fraud, when Defendants caused Fidelity to transmit the escrow funds by means of false pretenses by means of a wire communication; (ii) bank fraud, when Defendants obtained the escrow funds under the control of a bank by means of false pretenses; (iii) money laundering, when Defendants conducted transactions involving the escrow funds in order to disguise that Defendants obtained the proceeds by wire and bank fraud; (iv) transportation of stolen monies, by transferring the escrow funds; and (v) sale or receipt of stolen monies, by receiving the escrow funds. (ECF No. 76 at para. 49-53). The Court holds that Fidelity's allegations regarding wire fraud and bank fraud do not support finding open-ended continuity. These predicate acts pertain only to Fidelity, were designed to obtain the escrow funds, and concluded with receipt of the escrow funds.

Although money laundering, transportation of stolen monies, and receipt of stolen monies may lend themselves to supporting open-ended continuity in the abstract, the Court finds that Fidelity failed to allege open-ended continuity through these predicate acts. Fidelity alleges that APM, Mr. Appelbaum, and Mrs. Appelbaum "squandered" the escrow funds through lavish spending. (ECF No. 76 at para. 39). Further, Fidelity contends that the "vast majority" of the

12

escrow funds have dissipated. *Id.* at para. 41. These allegations indicate that Defendants'
laundering, transferring, and receipt of the escrow funds has concluded. Fidelity is correct that the
"fortuitous interruption" of racketeering activity does not disrupt open-ended continuity. (ECF
No. 92 at 11 (citing *Heinrich v. Waiting Angles Adoption Servs., Inc.*, 668 F.3d 393, 410 (6th Cir.
2012)). Nevertheless, Fidelity does not allege that APM, Mr. Appelbaum, and Mrs. Appelbaum
ended the dissipation of the escrow funds because they were caught. Rather, Fidelity alleges that
the majority of the funds were dissipated prior to their identification and freezing, thus concluding
the fraudulent activity. Based on these pleadings, the Court holds that Fidelity has, at this point,
failed to sufficiently allege open-ended continuity to support its RICO claim. As Fidelity has
continued to discover new information about the scope and extent of the fraud, the Court will
dismiss without prejudice Count II of Fidelity's FAC.

### III.    Fidelity's Civil Conspiracy Claim

Defendants argue that the Court must dismiss Fidelity's Count VII for Civil Conspiracy if
it dismisses Mrs. Appelbaum, as only Mr. Appelbaum and APM would remain as defendants.
(ECF No. 83 at 4). A "corporation and its agents are a single person in the eyes of the law, and a
corporation cannot conspire with itself." *Cross v. Gen. Motors Corp.*, 721 F.2d 1152, 1156 (8th
Cir. 1983). However, the Court will not dismiss Mrs. Appelbaum from this case. Fidelity alleges
sufficient actors to maintain a claim for civil conspiracy, and the Court thus denies Defendants'
motion to dismiss Count VII of Fidelity's FAC.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss Defendant Sarah J.
Appelbaum is **DENIED**. (ECF No 83).

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss Counts II and VII of Fidelity's First Amended Complaint is **GRANTED in part and DENIED in part**. (ECF No. 84). It is granted as to Count II of Fidelity's First Amended Complaint, with leave to amend. It is denied as to Count VII of Fidelity's First Amended Complaint.

Dated this 7th day of August, 2023.

_John A. Ross_

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**