**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| FIDELITY NATIONAL TITLE INSURANCE COMPANY, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 4:22-cv-01391-JAR |
| APM MANAGEMENT SERVICE'S, LLC, ) et al., ) ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Motion to Dismiss filed by Defendants James Dyett, LaTonya Dyett, JMD Consultant Services LLC, and LRD Consultant Services LLC (the "JMD Defendants"). ECF No. 205. Plaintiff Fidelity National Title Insurance Company filed its Response in opposition. ECF No. 207. Defendants have filed their Reply. ECF No. 209. This matter is now fully briefed and ripe for disposition. For the reasons set forth below, the Court will deny the JMD Defendants' Motion to Dismiss.

### Background

Plaintiff originally brought this action in this Court on December 30, 2022, raising claims against four Defendants related to a fraudulent wire transfer. ECF No. 1. After conducting some discovery, Plaintiff filed a First Amended Complaint on February 10, 2023. ECF No. 76. Plaintiff filed a Second Amended Complaint ("SAC") on August 18, 2023. ECF No. 165. Plaintiff's SAC raises claims related to the fraudulent wire transfer against thirteen (13) named Defendants and ninety-nine (99) unnamed, Doe Defendants.

The SAC is the first time that the JMD Defendants were named in this action. As relevant to this Motion, Plaintiff raises three claims against the JMD Defendants: (1) Violation of

the Computer Fraud and Abuse Act ("CFAA"), specifically 18 U.S.C. § 1030(a) and (b); (2) Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), specifically 18 U.S.C. § 1343 (wire fraud), § 1344 (bank fraud), § 1956 (money laundering), § 2314 (transportation of stolen goods), and § 2315 (sale or receipt of stolen monies); and (3) civil conspiracy.[1]

The SAC alleges that the individual JMD Defendants, Mr. and Mrs. Dyett, are citizens of Maryland. ECF No. 165 at ¶¶ 13–14. As to the LLC JMD Defendants, the SAC alleges that Mr. Dyett and Mrs. Dyett are the sole members of JMD and LRD, respectively. *Id.* at ¶¶ 17–18. Plaintiff also alleges that Mr. and Mrs. Dyett are the registered agents and/or sole authorized persons[2] for both JMD and LRD. Plaintiff generally alleges that the JMD Defendants were part of a nation-wide scheme to defraud victims of money and then launder said money through personal and business bank accounts and cryptocurrency exchanges. *Id.* at ¶¶ 28–35. Plaintiff specifically alleges the JMD Defendants acted in furtherance of the overall scheme "by, *inter alia*, transferring money to [a Missouri based co-Defendant] to pay for [the co-Defendants'] legal

---

[1] Under Missouri law, civil conspiracy is not a distinct cause of action. *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 22 (Mo. 2012) (en banc). Rather, a civil conspiracy claim is an attempt by a plaintiff "to hold the conspirators jointly and severally liable for the underlying act." *Id.* (quoting *8000 Maryland, LLC v. Huntleigh Fin. Servs. Inc.*, 292 S.W.3d 439, 451 (Mo. Ct. App. 2009)). "The gist of the action is not the conspiracy, but the wrong done by acts in furtherance of the conspiracy or concerted design resulting in damage to plaintiff." *Id.* (quoting *8000 Maryland*, 292 S.W.3d at 451). Here, because personal jurisdiction over the JMD Defendants in relation to the civil conspiracy claim depends on the Court's jurisdiction regarding the CFAA and RICO claims, the Court need not separately address personal jurisdiction over the JMD Defendants in relation to the civil conspiracy claim.

[2] "'Authorized person' means any person, whether or not a member, who is authorized by the articles of organization, by an operating agreement, or by unanimous consent of the members and any other person whose consent is required by the operating agreement, to execute or file a document required or permitted to be executed or filed on behalf of a limited liability company . . . , or to otherwise act as an agent of the limited liability company." Md. Code Ann. Corps. & Ass'ns § 4A-101(c).

2

fees in defending the instant action." *Id.* at ¶ 68.  Plaintiff further alleges that JMD wired $10,000 to a co-Defendant's account at Commerce Bank on January 17, 2023; James Dyett wired $25,000 to co-Defendant's Commerce Bank account on January 19, 2023; and JMD wired an additional $10,000 to co-Defendant's Commerce Bank account on February 2, 2023.  Plaintiff alleges that the JMD Defendants were associated with an enterprise affecting interstate and foreign commerce for the purpose of furthering the enterprise's illegitimate goals of laundering and sheltering stolen funds.  *Id.* at ¶¶ 99–110.  Plaintiff also alleges that the JMD Defendants, along with their co-Defendants, agreed to accomplish the unlawful acts of fraud and conversion in furtherance of the general scheme to steal monies from Plaintiff.  *Id.* at ¶ 136.

      The JMD Defendants now move for dismissal of the claims against them based on Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  ECF No. 205.  In their memorandum of law in support, the JMD Defendants argue that Plaintiff has failed to allege that they have any connection to the state of Missouri, which they contend prevents the Court from exercising general or specific jurisdiction over them.  They argue that the Plaintiff has failed to show that personal jurisdiction over them in Missouri is warranted under the Missouri long-arm statute. Specifically, they argue that Plaintiff has failed to allege that the JMD Defendants have transacted business in Missouri, entered into a contract in Missouri, or own property in Missouri, claims that are supported by the affidavits of Mr. and Mrs. Dyett.  ECF Nos. 205-1 and 205-1.  They also argue that Plaintiff has failed to allege that they have sufficient minimum contacts with the state of Missouri to survive a due process challenge under the Fourteenth Amendment.

      Plaintiff counters by arguing that the Court can exercise jurisdiction over the JMD Defendants because RICO provides a statutory basis for personal jurisdiction under 18 U.S.C. § 1965(b).  ECF No. 207.  Plaintiff alternatively argues that the JMD Defendants are subject to

specific personal jurisdiction according to the allegations in the SAC because Plaintiff properly alleges the JMD Defendants have a connection to Missouri, i.e., they committed a tort in Missouri by transferring stolen funds to Missouri-based co-Defendants in furtherance of the overall conspiracy to defraud Plaintiff. They argue that Mr. and Mrs. Dyett's affidavits do not contradict the allegations in the Complaint that the JMD Defendants transferred ill-gotten funds to Missouri-based co-Defendants.

In their Reply, the JMD Defendants argue that Plaintiff's SAC "contains no actual allegations, which could arguably establish a basis for 'the ends of justice' requiring jurisdiction over" them under the RICO national service provision. ECF No. 209 at 1–2. They further assert that Plaintiff's Response concedes that the jurisdictional allegations in the SAC are deficient. Finally, they argue that any deficiency in the SAC "could be remedied by incorporating the arguments contained within the Response into an amended complaint." *Id.* at 4.

## Discussion

Personal jurisdiction over a defendant "represents the power of a court to enter a valid judgment imposing a personal obligation or duty in favor of the plaintiff." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 592 (8th Cir. 2011) (internal quotation marks and citation omitted). Plaintiffs bear the burden of establishing a "prima facie showing of jurisdiction," and the Court views the facts in the light most favorable to plaintiffs. *Kaliannan v. Liang*, 2 F.4th 727, 733 (8th Cir. 2021). "The evidentiary showing required at the prima facie stage is minimal." *Bros. and Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F. 4th 948, 951 (8th Cir. 2022) (citation omitted). To establish the prima facie showing, plaintiffs must plead sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state. *Id*. The Court may also review affidavits and other exhibits to determine whether

4

personal jurisdiction exists. *Pederson v. Frost*, 951 F.3d 977, 979 (8th Cir. 2020). The court must view the evidence "in a light most favorable to the plaintiff and resolve factual conflicts in the plaintiff's favor; however, the party seeking to establish the court's personal jurisdiction carries the burden of proof and that burden does not shift to the party challenging jurisdiction." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014).

Personal jurisdiction takes two forms: general and specific. *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). For a corporation, the paradigm forum for the exercise of general jurisdiction is its state of incorporation or its principal place of business. *See id.*; *see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021).

Specific jurisdiction requires "an affiliation between the forum and the underlying controversy, and where that connection is absent, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Zazzle*, 42 F.4th at 952 (cleaned up). "[T]he existence of personal jurisdiction depends on the long-arm statute of the forum state and the federal Due Process Clause." *Id.* at 951 (citation omitted). These are separate inquiries that must both be met to permit personal jurisdiction over a foreign defendant. *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475–76 (8th Cir. 2012).

Missouri's long-arm statute authorizes jurisdiction over defendants as to any cause of action arising from, among other things, the person or firm's "commission of a tortious act" within Missouri. Mo. Rev. Stat. § 506.500.1(3); *see also Zazzle*, 42 F.4th at 924.

Due process requires that there be "sufficient minimum contacts between a defendant and the forum state so that jurisdiction over a defendant with such contacts may not offend traditional

notions of fair play and substantial justice." *Aly v. Hanzada for Imp. & Exp. Co.*, 864 F.3d 844, 849 (8th Cir. 2017) (citations and internal quotation marks omitted). "A defendant's contacts with the forum state must be sufficient so that a non-resident defendant should reasonably anticipate being haled into court there." *Fastpath*, 760 F.3d at 820–21 (citing *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980)). "Sufficient minimum contacts requires some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 821 (citation and internal quotation marks omitted). This requirement "ensures that a defendant will not be haled into a jurisdiction solely as the result of random, fortuitous, or attenuated contact or of the unilateral activity or another party or a third person." *Id.* (quoting *Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 693–94 (8th Cir. 2003)). Importantly, the relationship between the defendant and the action must arise out of contacts that the defendant itself creates with the forum state; contacts between the plaintiff and the forum state do not satisfy this inquiry. *Id.* (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

In assessing a defendant's minimum contacts with the forum, district courts in the Eighth Circuit consider five factors: (i) the nature and quality of the contacts, (ii) the quantity of the contacts, (iii) the relationship of the cause of action to the contacts, (iv) the interest of the forum state in providing a forum to its residents, and (v) the convenience to the parties. *See Pederson*, 951 F.3d at 980. Courts give "significant weight to the first three factors." *Id.* "In judging minimum contacts, a court properly focuses on the relationship among the defendant, the forum, and the litigation." *Enterprise Rent-A-Car Co. v. U-Haul Int'l, Inc.*, 327 F. Supp. 2d 1032, 1036 (E.D. Mo. 2004) (citing *Calder v. Jones*, 465 U.S. 783, 788 (1984)).

However, because Plaintiff raises a claim against the JMD Defendants under RICO, a different inquiry is required regarding the Court's personal jurisdiction over the JMD Defendants for that claim.  RICO includes a section covering venue and process, and a part of this section is a national service provision.  RICO provides that "[a]ny civil action or proceedings under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs."  18 U.S.C. § 1965(a).  Additionally, "in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof."  *Id.* at § 1965(b).

The Eighth Circuit has not yet addressed the relationship between RICO's nationwide service of process provision and personal jurisdiction.  But district courts in this Circuit, including this Court, have interpreted RICO's national service provision to permit personal jurisdiction over defendants with a showing of minimum contacts with the United States rather than minimum contacts with the forum state.  *See Tsai v. Karlik*, No. 4:14-cv-244-CEJ, 2014 WL 3687201, at *1 (E.D. Mo. July 24, 2014); *Golub & Assocs., Inc. v. Long*, No. 4:09-cv-92, 2009 WL 690118, at * 2 (E.D. Mo. Mar. 11, 2009) (collecting cases); *Jennings v. Bonus Bldg. Care, Inc.*, No. 4:13-cv-663, 2014 WL 1806776, at *2 (W.D. Mo. May 7, 2014); *see also FTC v. BINT Operations LLC*, 595 F. Supp. 3d 740, 749–40 (E.D. Ark. 2022) (holding that the exercise personal jurisdiction was proper over Texas defendant on claims brought under the Federal Trade Commission Act and the Consumer Review Fairness Act, which both include nationwide service of process provisions similar to that found in RICO).  These cases stem from the holding in *In re Fed. Fountain, Inc.*, 165 F.3d 600 (8th Cir. 1999).  There, the Eighth Circuit found that

7

personal jurisdiction over the out-of-state defendant was proper because (1) the Federal Rule of Bankruptcy Procedure under which the action was brought, Fed. R. Bankr. P. 7004(d), permitted nationwide service of process, and (2) evidence of defendant's presence in Texas was sufficient to overcome a due process challenge such that the district court could exercise personal jurisdiction over defendant in the United States District Court for the Eastern District of Missouri. *Id.* at 601–02.

Here, several named co-Defendants are domiciled in Missouri and/or reside in this district. Therefore, this action was properly initiated by Plaintiff in this district. *See* 18 U.S.C. § 1965(a). According to the national service provision and precedent within this Circuit, to establish that the Court's exercise of personal jurisdiction over the JMD Defendants is proper, Plaintiff need only show that the JMD Defendants' have minimum contacts with the United States. The JMD Defendants are residents of Maryland and therefore have sufficient minimum contacts with the United States to establish the Court's personal jurisdiction over them in regard to Plaintiff's RICO claim. *See Fed. Fountain*, 165 F.3d at 601–02. As other courts have, this Court finds that litigating Plaintiff's RICO claim in this district against all Defendants is necessarily in the interest of justice. *See, e.g.*, *Tsai*, 2014 WL 3687201 at *1. As such, the Court will deny the JMD Defendants' Motion to Dismiss Plaintiff's RICO claim for want of personal jurisdiction.

Plaintiff does not dispute that the Court lacks the ability to exercise general jurisdiction over the JMD Defendants, but contends that specific personal jurisdiction over them is proper. To establish specific personal jurisdiction over Defendants as to the CFAA claim, Plaintiff must establish that the exercise of personal jurisdiction over Defendants is (1) proper under the Missouri long-arm statute, and (2) comports with due process.

Plaintiff has adequately alleged that personal jurisdiction is proper over the JMD Defendants under Missouri's long-arm statute.  The statute permits personal jurisdiction over a defendant who "commi[ts] a tortious act" within Missouri.  Mo. Rev. Stat. § 506.500.1(3). Under Missouri law, allegations of extra-territorial acts that produce consequences in Missouri are sufficient to establish that a defendant has committed a tort in Missouri. *Bryant v. Smith Interior Design Grp., Inc.*, 310 S.W.3d 227, 232 (Mo. 2010) (en banc).  Plaintiff here alleges that the JMD Defendants were part of a conspiracy to defraud Plaintiff and took actions in furtherance of that conspiracy, namely sending money to co-conspirators' Missouri-based bank accounts to allow the co-Defendants to defend against legal action resulting from the fraud perpetrated against Plaintiff.  These allegations are sufficient to establish the Court's jurisdiction over the JMD Defendants under Missouri's long-arm statute.

After reviewing the SAC, the briefing, and the relevant case law, the Court finds that Plaintiff has sufficiently alleged the JMD's Defendants' minimum contacts with Missouri to exercise personal jurisdiction over the JMD Defendants regarding Plaintiff's CFAA claim. Plaintiff alleges that the JMD Defendants transferred money to other Defendants in Missouri to help those Defendants pay their legal fees in furtherance of the conspiracy.  While Mr. and Mrs. Dyett have submitted affidavits attesting that they have not conducted business in Missouri, signed a contract in Missouri, or currently own property in Missouri, they do not deny that they transferred funds to co-Defendants bank accounts in Missouri.  Taking the allegations in the light most favorable to the Plaintiff—as the Court must do when deciding on a motion to dismiss—the Court is satisfied that Plaintiff has raised sufficient allegations for the Court to exercise specific personal jurisdiction over the JMD Defendants.  The JMD Defendants' transfers of allegedly ill-gotten funds to a Missouri bank were of the nature and quality of contacts to be expected in a

9

nation-wide conspiracy as alleged by Plaintiff.  Plaintiff has alleged three separate transactions perpetuated by the JMD Defendants in furtherance of the conspiracy over the course of three weeks.  These transfers of money are related to the overall fraudulent scheme described by Plaintiff in the SAC.  These factors weigh in favor of exercising personal jurisdiction over the JMD Defendants.  And while the JMD Defendants may be slightly inconvenienced by litigating these claims in Missouri rather than Maryland, the Court does not find that some inconvenience to the parties overcomes the other factors that weigh in favor of exercising jurisdiction.  The Court will therefore deny the JMD Defendants' Motion to Dismiss the Plaintiff's CFAA claim.

## Conclusion

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants James Dyett, LaTonya Dyett, JMD Consulting Services LLC, and LRD Consulting Services LLC's Motion to Dismiss (ECF No. 205) is **DENIED**.

Dated this 2nd day of April, 2024.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

10